No. 8712.
Orleans Appeal.

---

MRS. ANNA M. GRAFF v. SOVEREIGN CAMP, SECURITY DEGREE, WOODMEN OF THE WORLD, Appellant.

---

(November 3, 1924, Opinion and Decree.)
(November 17, 1924, Rehearing Refused.)
(January 6, 1925, Decree Supreme Court Writ of Certiorari and Review Refused.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest, Insurance, Par. 96.**
Where a life insurance company or fraternal order has knowledge of facts giving it a contractural or even an implied right, to avoid liability as insurer

under a policy duly issued, accepts a premium or assessment for which it knows the insured to be in arrears, it thereby waives the right to forfeiture.

2. **Louisiana Digest, Forfeitures, Par. 3.**
"Forfeitures have never met with the special encouragement of courts. They must find support in law in a manner that leaves no doubt as to the right of their exercise."

Lawrence vs. Penn Mutual Life Ins. Co., 113 La. 87, 36 South. 898.

See also Fitzgerald vs. Benevolent Knights of America, No. 8324 Orl. App., decided Nov. 13, 1922.

Appeal from Civil District Court for the Parish of Orleans, Division "E", Hon. Wynne G. Rogers, Judge.

This is a suit for death benefit claimed to be due the named beneficiary under an insurance policy. Judgment for plaintiff. Defendant appealed.

Judgment affirmed.

Jessey Benedict Gessner, attorney for plaintiff and appellee.

Andrew B. Booth, Jr., Pierre D. Olivier, attorneys for defendant and appellant.

BELL, J. Mrs. Anna M. Graff, plaintiff herein, widow of Emile Graff, and beneficiary under a certain policy, dated October 13, 1919, which also is described as "whole life certificate (No. 103,406), issued by the Woodmen of the World, Universal Camp, Security Degree, Omaha, Nebraska", sues the insurer, defendant herein, for the sum of $500.00, as "death benefit", claimed to be due the named beneficiary.

The defendant organization or society admits the issuance of the policy to the deceased, Emile Graff, and that he died on May 16, 1920, and that the above certificate calls for a cash payment to plaintiff of $500.00 upon the death of her husband. It is further admitted that the defendant was advised of the insured's death, and that plaintiff made demand for settlement, which was refused, and that the insured paid all of his dues up to May 30, 1920.

The sole defense is that Graff, after paying his first monthly dues or assessment of eighty cents on the day the policy was delivered, to-wit: October 13, 1919, failed to pay like amounts on the first day of the following consecutive months of November, December and January. The evidence shows this fact to be true and that nothing was paid by him from October 13, 1919, until January 5, 1920, upon which latter date he paid eighty cents for each of the monthly premiums due on the first of November and December of 1919. Thereafter, it appears that he paid similar monthly premiums as follows:

Eighty cents for January, 1920, on Feb. 11, 1920.

Eighty cents for February, 1920, on March 4, 1920.

Eighty cents for March, 1920, on March 4, 1920.

Eighty cents for April, 1920, on April 5, 1920.

Eighty cents for May, 1920, on April 5, 1920.

It is, therefore, contended that the policy became null and void on the 2nd day of December, 1919, that is, upon Graff's failure to remit within thirty days after his first delinquency, to-wit: November 1, 1919, the premium due the previous month, which would have become delinquent on the latter date, and, further, because of his other untimely remittances, as shown in the above schedule of payments. The defendant pleads the constitution and by-laws of the Sovereign Camp, and specially pleads and incorporates in its answer the following provision in the policy:

"This certificate is granted in consideration of the monthly premium hereinbefore stated in the schedule and of the payment of a like amount on of before the first day of each consecutive month thereafter during the continuance of this contract, and the further consideration of the delivery of this certificate during the lifetime and good health of the member.

"All premiums are payable at the Home Office of the Society, but may be paid to an authorized representative of the Society; such payments to be recognized by the Society must be entered at the time of payment in the premium receipt book belonging with this certificate. If for any reason the premium be not called for when due, it shall be the duty of the member before said premium shall be in arrears thirty days, to bring or send said premium to the Home Office of the Society or to one of its local representatives. If the premiums are not paid as herein specified this contract shall be null and void.

"REVIVAL.—Should this certificate become void for non-payment of premium, it will be revived within one year from the date to which premiums have been duly paid upon payment of all arrears, provided satisfactory evidence of the insurability of the member be furnished to the Sovereign Commander, but such revival shall not take effect unless at the date thereof the member is living and in sound health."

Further answering, the defendant shows that the payment received by it on January 5, 1920, was received without its knowledge or information that Graff was not in sound health, and that this fact only became known to the Society after Graff's death, and then only from the attending physician's certificate of death, attached to the proof of death, showing that the last illness of the deceased was five or six months prior to his death. Upon the following issues the case was fully tried, and from a judgment rendered for plaintiff, defendant appeals.

Under the admissions above noted, there remains for determination three questions of fact: 1st, did Graff ever believe that he had defaulted on the policy; 2nd, did he ever make application for reinstatement, and, 3rd, did he ever have knowledge or reason to believe that he was in bad health at the time that the defendant's agent called for and collected the several premiums claimed to be in arrears?

The evidence shows that Graff was a young man, 24 years of age, when he died, and that he was a machinist in apparent strong, robust health, and that he was never at any time notified by the defendant or any of its agents or collectors of the fact that he was delinquent. It is reasonable to assume on this first point that he did know, or was charged under the law with knowledge of the fact, that he had not paid his second or third premiums when they became due, but there is nothing in the constitution or by-laws of the Society nor in the clauses of the policy itself, above quoted, that required him to apply for reinstatement, nor is there any evidence that he was ever notified that the company considered him a delinquent or considered that his policy had elapsed. On the contrary, it is clear from the evidence that despite the fact of his failure to pay the November or December premiums when due, the collector of the company called on January 5th and received from him the two previous months' premiums, then in arrears. We find in the second clause of the policy above quoted that a "duty", but certainly no obligation is imposed upon a policyholder to forward his dues when same are not called for. Other language in this same clause implies that the company expects, under any condition, to first call for the premiums rather than to have them forwarded. None of the collectors of the defendant Society were placed by defendant on the stand, and it is, therefore, not shown where any demand for delinquent dues had been made upon Graff. It does not appear from any evidence in the record that Graff had any occasion to know that he was not in good health. The doctor who attended him was placed on the stand by the defendant, and, as its witness, testified, among other things, that he had examined Graff for the first time on December 16, 1919, and that the symptoms which he seemed to have were rather of an uncertain nature, and that he had made no diagnosis of the patient's trouble. It is further

shown that Graff continued his duties, which evidently involved labor of a strenuous nature, continuously until within a few days of his death, his death coming upon him suddenly from a rupture of the anaurism of the aorta.

There was some attempt on the part of defendant to prove that Graff was afflicted with tuberculosis for many months prior to his death, but the doctor's certificate and his testimony is quite to the contrary. The doctor further testifies that Graff was a large, square-shouldered man, of robust type, and that it was quite possible, in the early stages of this disease, from which he died, for him to have had the disease without knowing it.

The plaintiff in this case testifies that at no time when the collector called for the payments was she informed that the policy had lapsed, and there is no evidence whatever in the record that Graff had such knowledge, nor is it shown, in fact, that the company, by specific notice or by any of its acts, considered the policy as lapsed, or that it attempted, through any of its agents, to convey such a fact to either Graff or the plaintiff. We must gather from this that there was no deception or fraud whatsoever on the part of either Graff or the beneficiary.

There is further proof in the record that the defendant Society received from the plaintiff and permitted her to go through the expense and trouble of making a claim for the insurance, and of securing from the physician and herself, respectively, proof of death and proof of claim, all without any declaration that the claim was not to be recognized or that the policy had been considered or declared void.

Under the foregoing facts, and considering the conduct of the defendant, we are of the opinion that a clear case of estoppel applies, and that there was never any forfeiture of the policy in law or in fact.

In the case of Powell vs. Factors &

Traders Ins. Co., 28 La. Ann. 19, a fire insurance policy was held not to have been voided by failure of the insured to comply with certain conditions therein relative to information which the insured had obligated himself to convey to the insurer, from time to time, for the reason that the evidence showed the insurance company to have received from the insured, after knowing of his delinquency in this respect, various premiums falling due from time to time. Under such circumstances, the court held that the policy could not have lapsed under the doctrine of estoppel, and that the defendant could not accept the fruits of a contract and allege its invalidity for a breach thereof, known at the time of the acceptance of such fruits. The court further held that if the policy was valid to earn premiums, it remained valid to bind the insurer for losses occurring in the meantime. (See also 19 Cyc., 627.)

In Lawrence vs. Penn Mutual Ins. Co., 113 La. 87, 36 South. 898, where a note was given in payment of the first premium instead of cash, as provided in the policy, it was held that the insurer could not for this reason, after accepting the note through its agent, plead that the policy was void. In that case, the court laid down a well-accepted doctrine that it would look with disfavor upon the forfeitures of a policy, and would only support such a plea when no doubt was left as to the right to exercise it. A careful research for any qualification of this doctrine, as laid down by the Supreme Court of this State, has not been successful. (Gunther et al. vs. Mutual Aid Ass'n, 40 La. Ann. 777, 5 South. 65.

In 25 Cyc., pp. 869, 870, 871, verbo: "XI, ESTOPPEL, ETC.", paragraph 4: An approval of this same doctrine expressed upon the force of innumerable authorities there cited. It is said:

"If the company, with knowledge of facts giving it a right to avoid the policy, ac-

cepts a premium or assessment, it thereby waives the right to forfeit the policy. * * * The acceptance of a premium or assessment is a waiver of forfeiture on acount of a default in not paying it in due time. * * * If, with notice of facts entitling it to avoid the policy, the company enters into negotiations for a settlement, or requires the furnishing of proofs of death at some trouble and expense, it is stopped from insisting on a forfeiture."

It is true, on the other hand, that there is authority to the effect that acceptance of delinquent premiums on condition that the insured is in good health, prevents the estoppel above referred to. This doctrine, a very just one, is expressed in 25 Cyc. 871, as follows:

"The acceptance or retention of premiums after forfeiture may be on the condition that the insured is then in good health, or that a medical certificate of good health be furnished, in which case there is no waiver unless insured is in good health and he furnishes the certificate."

But the above doctrine is not applicable to the instant case upon the facts before us, for the reason that there is nothing specific in the record to show that Graff had any reason to believe that at any time after his delinquency in payment of the premiums he was in any serious ill health.

We are of the opinion, for the reasons here noted, that if any forfeiture occurred, the same was waived by the Society in its subsequent action, and that it is estopped to claim, after accepting the several premiums paid by Graff, that the policy is void and the claim for that reason not recoverable.

It is, therefore, ordered, adjudged and decreed that the judgment herein appealed from be and the same is hereby affirmed, at defendant's costs in both courts.