RICHARDSON v. AMERICAN NATL. INS. CO.

——

(November 3, 1931. Opinion and Decree.)
(November 30, 1931. Rehearing Refused.)

——

Weiss, Yarrut & Stich, of New Orleans, attorneys for plaintiff, appellant.

Normann, McMahon & Breckwoldt, of New Orleans, attorneys for defendant, appellee.

HIGGINS, J. The beneficiary of an accident and health insurance policy brings this action to recover its face value, certain accruals, attorney's fees, and penalties.

Defendant filed exceptions of no right or cause of action on the ground that from the face of the record it appeared that the accidental injury and death of the insured occurred at 4:45 p. m. on February 20, 1929, and, therefore, after the policy had lapsed and the liability of the defendant had been suspended at 12 o'clock noon, standard time, February 15, 1929, under the express terms and conditions of the contract, for non-payment of the premiums due at that time, and also after the expiration of the five-day grace period, which ended at 12 o'clock noon, standard time on February 20, 1929, as also expressly provided in the policy.

In a supplemental petition the plaintiff then filed a plea of estoppel on the ground that the defendant's conduct and custom, in accepting delinquent premiums as late as fifteen days after they were due for a period of four years, precluded defendant from asserting the suspension and forfeiture clauses of the policy. The plaintiff further urged that the five-day grace period did not expire until sunset, or 6 p. m. February 20, 1929, under the provisions of article 2057 of the Revised Civil Code; that the deceased, having died at 4:45 p. m. February 20, 1929, his death took place while the policy was in full force and effect.

The learned judge a quo sustained the exceptions and the plaintiff has appealed.

From the allegations of the original and supplemental petitions the policy, premium receipt books, and certain admissions which were made for the purpose of trying the exceptions, we find the following facts:

The defendant is in the industrial life insurance business issuing policies for sums of $500 and less, in consideration of weekly and monthly premiums. These policies provide weekly cash dividends for disability caused by sickness, or accident, and for death benefits. On January 13, 1925, the defendant insured Thomas Richardson, the deceased, under one of its policies in consideration of the payment of $2 cash as a policy fee and a monthly premium of $1.95, payable in advance. Plaintiff, the mother of the insured, was designated as beneficiary. The policy provided that in the event of accidental death of the insured the beneficiary would be entitled to the principal sum of $500, plus an accrual of 10 per cent added to the principal for each consecutive year's renewal. The petitioner alleged that the policy was renewed and all of the premiums paid for five consecutive years, and claimed that the face value of and accruals, under the policy together with double indemnity and attorney's fees were due her as beneficiary.

The premium was due on or before the 15th of each month, but for practically four

years it was paid tardily from three to fifteen days each month, without protest or objection by the company. These payments were accepted by the company and the premium receipt books show under each amount that they were "accepted only subject to the conditions of the policy." The deceased was fatally shot at 4:45 p. m., February 20, 1929, and died immediately. The premium due at 12 o'clock noon, February 15, 1929, was not paid until February 22, 1929, or two days after the assured's death. Upon learning that the assured had died previous to the payment of the last premium, the company tendered the return of the money, which the plaintiff refused to accept, and it was deposited in the registry of the court.

The pertinent parts of the clauses of the policy over which this controversy arose, and which we are called upon to interpret and construe, are as follows:

"In consideration of the......payment in advance of a policy fee of Two Dollars and a premium of $1.95 does hereby insure Thomas Richardson, subject to all the conditions herein contained and endorsed hereon, from 12:00 o'clock noon, standard time, of the day this contract is dated, until 12:00 o'clock noon, standard time, of the 15th day of February, 1925, and for such further periods, stated in the renewal receipts, as the payment of the premium specified in said application will maintain this policy and insurance in force, against death or disability. * * * "

(2) "A period of five (5) days of grace is allowed for the payment of any renewal premium, during which the policy shall be maintained in full force and effect in accordance with its terms, but if the payment of any renewal premium is made after the grace period of the policy has expired neither the Insured nor the Beneficiary shall be entitled to recover for any accidental injury sustained between the date of such expiration and 12:00 o'clock noon, standard time, of the day following the date of such renewal payment; or for any illness originating or death occurring before the expiration of ten (10) days after the date of such renewal payment."

(3) "If default be made in the payment of the agreed premium for this Policy, the subsequent acceptance of a premium by the Company or by any of its duly authorized agents shall reinstate the Policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

We shall first discuss the issue with reference to the five-day grace period. Learned counsel for the plaintiff argues that since this clause of the policy does not specifically provide that the five-day grace period shall expire at 12 o'clock noon, standard time, February 20, 1929, that, under the provisions of article 2057 of the Revised Civil Code, the plaintiff had until sunset, or 6 o'clock, February 20, 1929, to pay the premium, and, therefore, the deceased having been accidentally killed at 4:45 p. m. of that evening, the policy was still in full force and effect. Counsel further says that this clause of the contract is susceptible of two constructions—that is, that the five-day grace period ended at 12 o'clock noon standard time on February 20, 1929, or at sunset, 6 o'clock p. m. February 20, 1929,—and, therefore, the clause is ambiguous, and that the ambiguity must be resolved against the insurance company, which wrote and furnished the policy under the well established rule of interpretation and construction.

Defendant's able counsel replied that the provision cannot be isolated from the other clauses in the policy and must be construed in connection with and in the light of them, and that expiration of the grace period is definitely fixed at 12 o'clock noon, standard time, February 20, 1929, by the provisions of the policy.

Article 2057 of the Revised Civil Code of Louisiana reads as follows:

"Where a term is given or limited for the performance of an obligation, the obligor has until sunset of the last day limited for its performance, to comply with his obligations, unless the object of the contract can not be done after certain hours of that day."

It appears that there was no corresponding article in either the Code Napoleon or the later Code Civil. A research of the French commentators failed to reveal any statement or doctrine which might have been responsible for the article's origin. Unless the research has been faulty, this article was not derived from the Civil Law. Investigation of the common-law authorities was more fruitful, revealing a doctrine similar to that announced by the article of the Code; the essential difference between the common-law rule and the codal provision being that the article of the Code allows performance until sunset, while the common-law permits performance until midnight. It may be, as was suggested by counsel for defendant, that the theory of this article of the Code was taken from the common law and introduced into our Civil Code through the medium of Edward Livingston, who blended the features of the common-law contracts with the civil law of conventional obligations.

The common-law doctrine is stated in 26 Ruling Case Law, at page 734, as follows:

"So where one is given a stated number of days in which to perform an act, he may perform at any time up to the midnight of the last day."

But this seems to be only the general rule, for we also find the statement (26 Ruling Case Law, p. 736) that:

"The general rule that the law knows no fractions of a day is true only sub modo, and in a limited sense, where it will promote the right and justice of the case. It is a mere legal fiction, and therefore, like all other fictions, is never allowed to operate against right and justice, and there are many decisions which hold that fractions of a day will be taken into account in the computation of time, when, from the nature of the case, justice demands that that be done."

Continuing on the subject, it is further stated (26 Ruling Case Law, p. 737) that:

"And where the parties to a contract stipulate for the performance of the contract by an agreed hour on a certain day the law in such case will take cognizance of the fractions of the day."

Bearing in mind that the common-law general rule is identical with article 2057, except that under the common law the obligor has until midnight, rather than sunset, for a performance, we note that in the case of Edington v. Michigan Mutual Life Insurance Co., 134 Tenn. 188, 183 S. W. 728, where the policy was in effect from 12 o'clock noon, September 22, 1905, and ran for nine years, the Tennessee Supreme Court held that the policy expired at 12 o'clock noon, September 22, 1914.

In Matthews v. Continental Casualty Co., 78 Ark. 81, 93 S. W. 55, the facts were that defendant insured the life of plaintiff's intestate against accidents occurring "within one year from 12 o'clock noon, standard time, of the date of the policy, which was the 11th day of December, 1902." Just as in the case at bar the days of grace expired in five days and the language "12 o'clock noon" was not mentioned in the grace proviso, so in the cited case the policy did not specifically state that it expired at "12 o'clock noon," December 11, 1903, but only "within one year from 12 o'clock noon," December 11, 1902. The same argument was made that is now made here, that the law does not regard fractions of days—the only difference being that in the cited case plaintiff was con-

tending that the policy expired at midnight, whereas here it is contended that it expired at sunset. The court overruled this contention in the following language:

"The defendant insured Ivan I. Matthews against accidents occurring 'within one year from 12 o'clock noon, standard time, of the date of the policy, which was the 11th day of December, 1902.' The accident to Matthews happened on the 11th day of December, 1903, at 4:30 o'clock in the afternoon. Did the defendant insure Matthews against this accident? This is the only question in the case.

"The parties to the contract of insurance agreed and stipulated when the year should begin. They had the right to fix the time and did so. The contract is valid, and must be enforced according to its terms. The accident did not occur within the year so fixed, and plaintiff cannot recover."

In the case of Troy Automobile Exchange v. Home Insurance Co., 102 Misc. Rep. 331, 169 N. Y. S. 796, 798, the facts were that the defendant had issued to plaintiff a policy of insurance covering theft risks on a number of automobiles. The policy itself was for a very short time, but, like the present one, was kept alive by the "renewals" or payments of the renewal premiums. On the face of the policy appeared the provision that the risk would run from 12 o'clock noon, standard time, of blank date, to 12 o'clock noon of the other blank date. The renewal certificates, like the provision covering the grace period in the case here, did not use the language "12:00 o'clock noon, standard time," but each merely covered the risk from the 30th of one month to the 30th of another.

The car in question was stolen on August 30, 1913, and the defendant predicated its defense upon the language of the certificate covering this period . "from August 30th, to September 30th, 1913," contending that the certificate of renewal did not cover the 30th of August, but excluded it. To this contention the court replied:

"The defendant, however, insists that the insurance kept in force by certificate No. 10 runs from August 30 to September 30, 1913, and therefore, admitting the date of the theft to be August 30th, it is not included within the terms of the contract, because the word 'from' would not include August 30th, or any part thereof, but would begin the next day; but the certificate must be construed in the light of the policy under which it was issued, and, reading both together as we must, it is clear that the insurance was from noon of the 30th of August to noon of the 30th of September."

In the case of Tufts v. Carradine, 3 La. Ann. 430, 431, where the question of priority among attaching creditors was involved, our Supreme Court said, in interpreting article 2057 of the Revised Civil Code (then article 2052 of the 1825 Code):

"It has been repeatedly held that, the general rule that the law admits of no fractions of a day, is a mere legal fiction; that it is subject to numerous exceptions; and that, whenever it becomes necessary to determine who of several persons has a priority of right, time may be distinguished with accuracy. In the case of Callahan v. Hallowell, 2 Bay (S. C.) p. 9, the court said that: 'Time is in its nature essentially divisible from years down to hours and minutes; a minute therefore will give priority as essentially in point of time, as a year or a day.' The court, in its opinion, refers to the case of Combe v. Pitt, 3 Burr. Rep. 1423, 1434, in which Lord Mansfield said: 'But though the law does not in general allow of the fraction of a day, yet it admits it in cases where it is necessary to distinguish. And I do not see why the very hour may not be so too, when it is necessary, and can be done; for it is not like a mathematical point, which cannot be divided.' "

See, also, Wittenberg v. Trautman, 3 La. App. 787.

From the foregoing authorities we conclude that, under both the common law and the codal article, contracting parties have the right to stipulate for the performance of the contract by an agreed hour on a certain day and the law in such case will take cognizance of the fractions of the day.

Does the contract in question contain such a stipulation?

Returning to the provisions of the policy, it clearly appears that it was the intention of the parties to have the policy commence and end at 12 o'clock noon, standard time, and not at sunset, or 6 p. m., or any other time. The policy specifically provided that it should commence at 12 o'clock noon, standard time, on January 13, 1925, the date on which it was issued, and end at 12 o'clock noon on February 15, 1925, "and for such further periods stated in the renewal receipts." The renewal receipts state that payment was accepted "only subject to the conditions of the policy."

Plaintiff concedes that the premium was due at 12 o'clock noon on February 15, 1929. The very provision of the policy upon which plaintiff is forced to rely to defeat a lapse of the policy stipulates that in the event of any premium being paid after the lapse of the policy, neither the beneficiary, nor the insured, shall be entitled to recover for an accident sustained between such lapse and 12 o'clock noon of the day following the payment of the renewal premium. The argument of plaintiff's attorney is predicated upon only a few words of the clause in question, which he attempts to isolate from the language of the balance of the clause and the other clauses in the policy. To accept this interpretation would be to give the plaintiff not only five days' grace, but five days, four hours, and forty-five minutes. We do not believe that this was contemplated by the parties and that the language in question must be interpreted in connection with the remainder of the clause and also the other provisions of the policy, which, as a whole, show that the policy commenced and ended at 12 o'clock noon, whether it was terminated upon the expiration of the term or upon the termination of a renewal period, or upon the termination of the grace period. All of the periods of time in the policy are based upon 12 o'clock noon. We find no uncertainty or ambiguity or conjecture in the language of the policy on this point.

We shall now pass to a consideration of the plea of estoppel.

In a late authority on the subject of insurance, 6 Couch's Cyclopedia of Insurance Law, sec. 1375, pp. 4939, 4940, we find the following:

"* * * * So, a provision that in case of a lapse of an insurance policy for non-payment of premiums the insurer shall not be liable for death of insured for any cause for a specified period after reinstatement, although the arrearage is fully paid up, is valid, and prevents recovery where death occurs during such period. Similarly, acceptance of an overdue premium sufficient to work a revival or reinstatement does not affect a waiver of the provision limiting liability to a return of premiums in case of death from disease contracted during the specified period after revival. * * *"

See, to the same effect, 4 Cooley's Briefs on Insurance (2d Ed.) p. 3800 et seq.

In Denton v. Provident Life & Accident Insurance Co., 238 Ky. 26, 36 S. W. (2d) 657, 659, the Court of Appeals of Kentucky had occasion to pass upon a plea of estoppel where the policy embodied the identical provision here in question. The organ of the court stated:

" * * * The whole transaction was simply a reinstatement of a lapsed policy subject to the conditions attendant upon a reinstatement set out in the policy, which appellant knew or of which he was charged with knowledge. The condition upon which the policy was reinstated was that it should not cover any illness which began less than 10 days after the acceptance of the premium, and as appellant's illness began within that time, it was not included within the indemnity provided for by the policy. See American National Insurance Co. v. Otis, 122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875."

In American National Insurance Co. v. Otis, 122 Ark. 219, 183 S. W. 183, 184, L. R. A. 1916E, 875, 876, it was said:

"We know of no ground of public policy which forbids an insurance company from including the above as one of the conditions upon which its policy holders who are 'out of benefit'—i. e., who have been suspended for non-payment of premium—may be reinstated, nor is there any ground of public policy forbidding the policy holder from accepting the renewal of the policy and reinstatement upon these conditions. In the absence of some statute or some well-recognized ground of public policy forbidding such conditions, the parties have a right to make them and are bound by them. See Conway v. Minn. Mut. Life Ins. Co., 62 Wash. 49, 112 P. 1106, 40 L. R. A. (N. S.) 148. * * *

"So the case we have here is not one of waiver of forfeiture or estoppel by conduct, but it is the simple case of enforcing a contract that the parties have made. As was said by Wheeler, J., speaking for the Supreme Court of New York, in Greenwaldt v. United States Health & Accident Ins. Co., 52 Misc. Rep. 353, 102 N. Y. S. 157, 158: 'While the courts have been reluctant to permit insurance corporations to avoid their policies through forfeiture clauses, I find no case in which they have made a new or different contract from that which was entered into between the parties. This is not the case of an insurance company avoiding its policy. It is an effort to make it liable under conditions which it was agreed should not constitute a liability.' "

The identical question presented by plaintiff's second contention was decided adversely thereto in Taylor v. Latin-American Life & Casualty Insurance Co., 152 La. 740, 741, 94 So. 375, where the policy sued upon contained the following language:

"This policy, if void for non-payment of premiums due, shall be deemed to have lapsed at the noon hour, central standard time, on the day when said premium became past due, but may be conditionally revived upon proper application and the payment of all revival arrears, but only to include or cover the effects of such injury or disease as shall be received or contracted after the expiration of the revival period of twenty-eight days, beginning at the noon hour, central standard time, of the day said application and revival arrears shall be received by an officer of the company, at the home office. * * *"

The court held:

"Plaintiff, however, contends that defendant is estopped to deny liability under the policy, because not only did the latter accept the premiums mentioned, but on other occasions, after the policy had lapsed, accepted those then due and in arrears, and that the effect of its having done so was to keep the policy, so long as there were no premiums due and unpaid, in full force and effect, in every particular, as if it had never lapsed.

"We think, however, that the payments must be deemed to have been made and accepted under those provisions of the policy relating to reinstatement. By accepting them, defendant did not give the insured to understand that the 28-day period was waived. In the absence of anything to the contrary, the insured was justified only in believing that the payments were accepted under the terms of the policy, which fixed the effect of receiving them."

The doctrine of Taylor v. Latin-American Life & Casualty Insurance Co., supra, is followed unanimously by the courts of all American jurisdictions. See, to this effect, American National Insurance Co. v. Gallimore (Tex. Civ. App.) 166 S. W. 17; Honea v. American Council, No. 27, J. O. U.

A. M., 139 Tenn. 21, 201 S. W. 127; Bienhoff v. North American Insurance Co., 153 Minn. 241, 190 N. W. 63; Ward v. Merchants' Life & Casualty Co., 139 Minn. 262, 166 N. W. 221; Hope v. Travelers' Protective Association, 130 S. C. 381, 126 S. E. 45; O'Brien v. Brotherhood of the Union, 76 Conn. 52, 55 A. 577; Greenwaldt v. United States Health & Accident Insurance Co., 52 Misc. Rep. 353, 102 N. Y. S. 157; Alters v. Journeyman Bricklayers' Protective Association, 43 Wkly. Notes Cas. (Pa.) 336; Union Central Relief Association v. Thomas, 213 Ala. 666, 106 So. 133; and Young v. Aeolian Council No. 17, 59 Pa. Super Ct. 174; Crosby v. Vermont Accident Insurance Co., 84 Vt. 510, 80 A. 817; National Life & Accident Insurance Co. v. Reams. (Tex. Civ. App.) 197 S. W. 332.

Counsel for plaintiff cites a host of cases on the trite proposition that where the insurance company, or its agents, lull the assured into a false sense of security by accepting premium in arrears, the company waives the policy provisions relative to forfeiture. Lally v. Prudential Insurance Co., 75 N. H. 188, 72 A. 208; Ballah v. Peoria, 168 Ill. App. 603; Pacific Mutual Life Ins. Co. of California v. McDowell, 42 Okl. 300, 141 P. 273, L. R. A. 1918E, 391; Boutin v. National Casualty Co., 86 Wash. 372, 150 P. 449; Dunken v. Aetna Life Insurance Co. (Tex. Civ. App.) 221 S. W. 691; Cooley's Briefs on Insurance, vol. 5, p. 4393, par. D; Wiser v. Central Business Men's Association (Mo. App.) 219 S. W. 102; Cooley's Briefs on Insurance (2d Ed.) vol. 5, p. 4383; 32 Corpus Juris, 1315, par. 565, Insurance; Elgutter v. Mutual Reserve Fund Life Ass'n, 52 La. Ann. 1733, 28 So. 289; 37 Corpus Juris, 499 (paragraph 241); Fitzgerald v. Benevolent Knights of America of Louisiana, Orleans No. 8324, unreported (see Louisiana and Southern Digests); Southern Indemnity Ass'n v. Hoffman, 16 Ala. App. 274, 77 So. 424; Graff v. Sovereign Camp, W. O. W., 1 La. App. 119; 32 Corpus Juris, 1318, par. 569; Estoppel; Gitz Sash Factory v. Union Insurance Society, 160 La. 381, 107 So. 232; 32 Corpus Juris, 1347, paragraph 623 (Insurance); La Societe de Bienfaisance des Arts et Metiers v. Morris, 24 La. Ann. 347; Kelly v. National Casualty Co., 9 Orl. App. 193; Butler v. People's Fire Insurance Co., 6 Orl. App. 354; 32 Corpus Juris, par. 615 (Insurance); Continental Life Insurance Co. v. Clanton, 149 Miss. 289, 115 So. 569; Tarver v. People's Fire Insurance Co., 6 Orl. App. 59, and cases cited therein at page 64; Howell v. Knickerbocker Life Insurance Co., 44 N. Y. 276, 4 Am. Rep. 675; Protection Life Insurance Co. v. Palmer, 81 Ill. 88; Kentucky Life Insurance Co. v. Kaufman, 102 Ky. 6, 42 S. W. 1104; Hammond v. American Mutual, 10 Gray (Mass.) 306; Michigan Mutual Life Insurance Co. v. Custer, 128 Ind. 25, 27 N. E. 124; Mutual Benevolent Life Insurance Co. v. Ruse, 8 Ga. 534; Busby v. North America Life Insurance Co., 40 Md. 572, 17 Am. Rep. 634; Wallace v. Metropolitan Life Insurance Co., 10 Ga. App. 517, 73 S. E. 698; Hartford Life & Annuity Ins. Co. v. Unsell, 144 U. S. 439, 12 S. Ct. 671, 36 L. Ed. 496; Cotton States v. Lester, 62 Ga. 247, 35 Am. Rep. 122; Spoeri v. Mass. Mut. Life Ins. Co. (C. C.) 39 F. 752; Markgraf v. Fellowship, 65 Misc. Rep. 64, etc., 119 N. Y. S. 665.

It must be remembered that there are two types of policies existent. The first, of which the policy involved in Bush v. Liberty Industrial Life Insurance Co., 15 La. App. 269, 130 So. 839, is a fair example, provides that no agent or employee of the company has any right to accept overdue premiums, but that the only procedure by which a lapsed policy may be reinstated is by submitting the policy to some designated officer of the company for revival, the indorsement of the revival on the

face of the policy, and the furnishing by the applicant of a certificate of insurability of the assured prior to a revival. Hence, where time after time premiums are collected on lapsed policies, the insured is lulled into a false sense of security by being led to feel that the company will not enforce its policy provisions and therefore estoppel takes place.

The second type of policy, of which that involved in Taylor v. Latin-American Life & Casualty Insurance Co., supra, is a fair example, provides that all that is necessary to effect a revival is the payment of past-due premiums, and the effect of such revival is fixed by the terms of the policy. In this type of policy, the insured cannot be said to have been misled by the company's acceptance of the delinquent premiums, for all that is necessary under the policy is the payment of money, and the effect of the revival is fixed by the terms of the policy which insured is presumed by law to have knowledge of.

The distinction between the forfeiture clause cases and the suspension clause cases is that in the former the acceptance of the delinquent premium is inconsistent with the terms of the policy, thereby resulting in a waiver or an estoppel, but in the latter the acceptance of the premiums in arrears is in accordance with and under a special clause of the policy and, therefore, waiver and estoppel cannot be said to have resulted.

Learned and diligent counsel for the plaintiff also directs our attention to the decisions of our Supreme Court, holding that, where the tenant pays the rent late on a number of occasions, contrary to the provisions of the lease, and the landlord accepts the payments without protest and objection, the lessor is estopped there-after from claiming a forfeiture of the lease on the ground that the lessee has breached the lease by not paying the rent promptly. Saxton v. Para Rubber Co., 166 La. 308, 117 So. 235; Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271; Standard Brewing Co. v. Anderson, 121 La. 936, 46 So. 926, 15 Ann. Cas. 251.

These cases are distinguishable on the same line of reasoning applied to the insurance forfeiture clause cases, the acceptance of the delinquent rent being inconsistent with the provisions of the lease, and, hence, the estoppel.

Finally, plaintiff's attorneys say that since the policy provides for a ten-day suspension of liability after the arrear premiums are paid, that, as practically all the payments were very late, the insured was paying for protection and not getting it, and that where the payment was twenty days later, the insured was not covered that month at all, but was required to pay the full premium. Therefore, such a clause in a policy would tend to cause the company to encourage delinquency and that such a contract is unconscionable and against public policy.

Whatever merit there may be in this contention, we feel that it is unnecessary for us to consider, for our Supreme Court, and the several Supreme Courts rendering the decisions cited, supra, appear to have approved such a provision and, therefore, as this is not an original question, we simply follow the authorities on the subject.

From the foregoing authorities we conclude that the plea of estoppel is not well founded and that the judgment sustaining the exception of no right or cause of action and dismissing plaintiff's suit is correct.

For the reasons assigned the judgment appealed from is affirmed.