OPINION
By GEIGER, PJ.
This matter is before this Court on appeal on questions of law from the judgment of the Court of Common Pleas of Miami County, Ohio recovered by the plaintiff-appellee *28 in the sum of $5,000.00 against the Motorists Mutual Insurance Company. the new defendant.
The cause of action arose by reason of an accident occurring on a highway about three miles south of the city of Troy, Ohio, on March 6th, 1935 at 11:30 P. M. At that time Wilfred Monnin was driving northward and stopped his automobile in the highway without giving sufficient warning to protect motorists approaching from the south. At that time Helen Louise Greulich was riding in an automobile which struck the parked automobile in the rear causing it to be deflected from the highway, throwing Miss Greulich violently from the ear in which she was riding and causing serious injuries.
At a subsequent date, she brought an action against Monnin, the driver of the stopped car, and recovered an unanimous verdict in the sum of $10,000.00. At the same time the jury returned its general verdict, it returned a special finding to the effect that the accident happened at 11:30 o’clock P. M. on the 6th day of March, 1935.
Upon this verdict judgment was entered, no motion for new trial having been filed. The verdict was returned on May 11, 1936, at which time • the Court, upon request of the parties defendant, filed a special finding of facts.
On October 1, 1937, plaintiff filed an application for permission to file a supplemental petition and to make parties defendant. Thereupon the Court made such an order. The supplemental petition was filed on October 1st against the Motorists Mutual Insurance Company and summons issued and served upon the defendant.
For her first cause of action against the Company she states on the 6th day of November, 1934, the Motorists Mutual Insurance Company executed and delivered to Wilfred Monnin a contract of insurance whereby the insurance company insured the said Monnin against loss by reason of liability imposed by law for damages on account of bodily injuries accidently suffered as a result of an accident occurring while said policy was in force to the extent of $5,-000.00. It is alleged that said policy was in full force on the 6th day of March, 1935, at the time of the accident. It is alleged that Monnin immediately after the accident notified the defendant company, through its agent, of the injuries received by the plaintiff; that the company absolutely denied liability thereby waiving any additional reports pertaining to the accident as required by the policy.
As a second cause of action it is alleged that the policy was a continuous or perpetual policy, the same to continue in full force as long as said defendant Monnin paid the premiums at six month intervals. It is alleged that Monnin, in order to extend the policy for an additional period of six months from the 6th day of March, 1935, was required to pay on or before the 6th day of March a premium of $7.95; that said Monnin on the 7th day of March, 1935, mailed to the company ' his personal check in said sum which the company accepted and retained as a premium in payment of the insurance and continued said policy in full force and effect until the 6th day of September, 1935; that the company continued to retain said premium and maintained said policy in full force after knowledge of the accident and injuries sustained by the plaintiff, thereby waiving any forfeiture or lapse of said policy by reason of the failure of Monnin to pay said premium on the day specified in the policy. It is alleged that Monnin performed all other conditions on his part to be per *29 formed. Judgment is asked against the insurance company in the sum of $5,000.00.
The Company, for its- answer to the supplemental petition, admits certain formal matters and admits the plaintiff, on the 11th day of May, 1936, recovered by default a judgment against Wilfred Monnin by reason of the alleged neglect. The Company denies all other allegations.
For its first defense, defendant alleged that it issued to Monnin the policy of insurance subject to the conditions therein stated, which became effective at 12 o’clock noon eastern standard time on September 6, 1934, and which by its terms was to continue for an initial term of six months and for such succeeding terms of six months each as the premium, was maintained or restored. It is alleged that Monnin wholly failed to pay the guaranty premium for the succeeding term of six months as the same fell due and that said policy was not in force and effect at the time of the happening of the accident. It is further denied that said policy was in full force and effect at the time set forth in the petition.
As a second defense it is asserted that if it be held that said policy was in force at the time of the occurence set forth in the petition, then said policy provided that no action shall be maintained against the Company to recover on any claim for any loss unless brought within twelve months after such loss shall have been ascertained by judgment in an action brought against the assured. It is alleged that the supplemental petition was not filed and this action was not commenced within one year from the date of the judgment.
To this answer a reply is filed. She replied to the first defense of the Company admitting certain allegations to the effect that the policy became effective at 12 o’clock noon eastern standard time on September 6th, 1934, to continue for the initial period of six months and for such succeeding terms of six months each as the guaranty premium was maintained. For a further reply, plaintiff denies that Monnin failed to pay the guaranty premium for the succeeding six months and denies the policy was not in force at the time of the accident. It is alleged that a check for said premium for the succeeding term of six months was mailed to the Company on the 7th day of March, 1935, which check was accepted as such succeeding premium and cashed by the Company on the 9th day of March and that said Company continued said policy in full force after the notice of said accident for the full succeeding term of six months; that by its conduct in retaining the premium and continuing the policy for the succeeding six months after knowledge of said accident and injuries resulting therefrom, it waived any forfeiture or lapse of conditions by reason of the failure of the defendant Monnin to pay the premium on the day specified.
For her reply to the second defense, plaintiff denies that she failed to file an action within twelve months after judgment for loss sustained by her and says that said judgment was entered on the 11th day of May, 1936, and within 12 months, on the 27th day of January, 1937, she filed her petition in case No. 28425 seeking to recover said judgment from the Company. Plaintiff further alleges that said defendant Company on the 25th day of February, 1937, filed a demurrer to said petition which demurrer was sustained on the 1st day of October, 1937, and that said action thereby failed “otherwise than upon its merits”; *30 that the plaintiff within a year thereafter filed her supplemental petition.
The cause was tried before the Court, a jury being waived. In compliance with the request made by the defendant, the Court on August 27, 1941, found as his conclusion of law from the evidence,
(1) That the plaintiff’s cause of action is not barred by the provision providing that no action shall be maintained unless within twelve months after such loss shall have been ascertained by judgment.
(2) That case No. 28425 on the dockets of the Court being an action by the plaintiff against Monnin and the Motorists Mutual Insurance Company, failed otherwise than on its merits within the meaning of §11233 GC; that said section is applicable and that by reason thereof the limitations provided in the policy do not preclude plaintiff’s right to maintain the action against the Company.
(3) That said policy remained in force during the entire day of March 6, 1935, and expired at midnight on said day; and was, therefore, in force at the time of the collision resulting in the plaintiff’s injuries, which Collision occurred at 1:30 P. M. on said day.
(4) That plaintiff and the defendant Monnin have performed all the conditions on their part to be performed with the exceptions of notifying the defendant Company in writing of said accident and the sending of a signed and sworn proof of loss as required by said policy, which condition the Court finds to have been waived by the conduct of the defendant Company in denying that said policy was in force at the time of said accident.
(5) The Court finds that as to the second cause of action, it is not necessary to pass upon the same.
(6) The Court finds that the plaintiff is entitled to recover from the Company the sum of $5,000.00 with interest from May 11, 1936.
A proper notice of appeal was filed and the case lodged in this Court.
We find among the papers no opinion of the Court below except such as may be indicated by the special finding of facts.
Defendant-Appellant asserts that the court erred in seven enumerated assignments of error, which may be briefly stated as follows,
(1) Finding that the policy remained in force during the entire day of May 6, 1935, and failing to find that it was not in force at such time and that it did not cover the claim.
(2) In finding that plaintiff and defendant, Monnin, had performed all conditions.
(3) In failing to find that plaintiff’s cause of action was barred by the provision of the policy that no action should be maintained unless brought within twelve months after the loss shall have been ascertained by judgment.
(4) In finding that the independent action of Plaintiff v Monnin, No. 28425, failed otherwise than on its merits within the meaning of §11283 GC and that said section was applicable and that the limitations in the policy did not preclude plaintiff’s right to maintain the action, No. 27639.
(5) In finding that defendant was entitled to recover and in overruling motion for new trial.
(6) That the findings are not sustained by the evidence.
(7) The Court erred in the rejection of evidence offered by the new defendant.
A bill of exceptions is filed. The *31 most important matter presented in the bill of exceptions is the insurance policy, which we examine to ascertain the conditions.
The policy provides, after reciting the character of insurance covering among many other things liability and property damage, that said insurance shall become effective at 12 o’clock noon eastern standard time on the 6th day of September, 1934, and shall continue in full force and effect for the initial term of six months and for such succeeding term of six months each as the guarantee premium is maintained and/or restored and/or paid as requested by this policy, subject however to all the terms and conditions of the policy, etc.
Section 2 provides, in substance, for insurance against loss by reason of the liability imposed by law upon insurance for damages on account of the ownership, etc. The liability for loss resulting in bodily injuries to one person is limited to $5,000.00. It is provided that in the event of an accident involving injuries covered by the policy, the assured shall give immediate written notice thereof with the fullest information possible to the home office of the company as soon after such occurence as may be reasonably possible * * * and in the event the suit may be brought against the assured to enforce such claim, the assured shall assist the company in the investigation, etc. The payment of the sales charge entitles the applicant to insurance so long as he shall comply with the tequirements of the company * * * and pay the premium required of him by the company. No action shall be maintained against the company to recover upon any claim for any loss under Section 2 (under which this action is maintained) unless brought within twelve months after the loss shall be so ascertained. No action shad be maintained against the company to recover on any claim for loss sustained under Section 2 unless commenced within one year after the amount of such claim shall,, have been ascertained by judgment in an action against the assured upon trial of the cause * * *, nor in any event unless brought within twelve months after such loss shall be ascertained. Each person obtaining insurance shall make a guaranteed premium payable in advance * * the policy may be canceled by the assured by giving notice to the company accompanied by the policy, in which event the company will refund, at the close of the current six month period, the unusued portion of the guarantee premium * * This p0iiey may be canceled by the company only in event the assured fails to comply with any requirement of the company or becomes an undesirable risk, in which ev-nt a written notice shall be mailed to the assured and the company shall refund, at the close of the then current period, the guarantee premium after making certain deductions * :r *.
In case of failure of the policy holder to pay any premium or obligation to the company as and when the same falls due * * * his policy shall be lapsed as of the date on which the payment becomes due or of the date when such other requirements must be performed. A lapsed policy may be reinstated upon the written application made to and accepted by an officer at the home office and by the payment of the reinstatement fee of one dollar which shall accompany such application; but the company shall not pay any loss sustained between the date of the lapse and the date of reinstatement.
It will be observed that this policy shall become effective at 12 *32 o’clock noon eastern standard time on the 6th day of September, 1934, and shall continue in full force and effect for the initial term of six months and for such succeeding terms of six months as the guarantee premium is maintained or restored.
Most policies, especially those of fire insurance, begin at 12 o’clock noon of the initial date and extend to 12 o’clock noon of the corresponding date for expiration, but this policy provides it shall begin at 12 o’clock noon and continue in full force for the initial term- of six months. That the Company understood the time of the expiration of the policy to be at 12 o’clock noon of the corresponding day or upon the expiration of the term may be gathered from the three slips, two of which, the white and blue, give notice of the date of the semi-annual premium. Both of these have printed in the upper left hand corner “Lapse date — Noon, March 6, 1935”. The third, or yellow slip, designated semi-annual premium notice has the same legend, “Lapse date — Noon, March 6, 1935.”
These notices are no part of the policy. The policy itself states that it shall become effective at 12 o’clock noon on the 6th day of September, 1934, and continue for the initial term of six months. This brings us face to face with the question as to whether a provision that a thing is to be done within six months from a given hour or a day means that the transaction shall be completed on the same hour of the day upon whicn it was begun, and presents a serious question in this case.
Interesting briefs have been filed upon this question. If we determine that under the law a certain number of days or months after a named hour means the same hour named as that at which the contract began, then the plaintiff may not recover unless there is a waiver or other qualification.
Counsel for plaintiff asserts, and supports his claim by numerous citations, that the time the policy expired was at midnight on the 6th of March, 1935, one-ha'lf hour after the accident occurred. On the other hand, counsel for the Company maintains that the policy expired at 12 o’clock noon of the same day it first became effective.
The first assignment is, the Court erred in finding that the policy remained in force during the entire day of March 6, 1935. The policy provides,
“Said insurance shall become effective at 12:00 o’clock noon, Eastern Standard Time, on the 6th day of September, 1934, and shall continue in full force and effect for the initial term of six months and for such succeeding terms of six months each as the guarantee premium and/or premium is maintained or restored.”
Many insurance policies definitely state the hour of the day upon which they terminate. This policy omits that provision. The obligors of the policy were content to state that it became effective at 12 o’clock noon and continued in full force for the initial term of six months. We need not now discuss the effect upon the contract of its failure to state what hour of the day it would terminate. Whatever inference is to be drawn from this omission is, of course, to be construed against the insurance company.
There are not many cases in Ohio to which we may refer for authority. O. Jur. Vol. 39, Page 196, under the heading “Computation of Time” states, as a general rule, that fractions of time are not generally considered in the legal computation of time ■ and the day on *33 which an act is done or an event occurs must be wholely included or excluded.
In the case of Foster v Hall, 16 Ohio, 111, at page 112, the Court in discussing the priority of a mortgage filed before the Court convenes as against a judgment lien obtained on the same day, but after the Court convenes, discusses the matter to some extent, but without much value for the solution of our question. On page 113 it is said,
“The word day, in law, embraces the entire day; but that a day in law is not divisible, is a mere fiction, only observed for the purposes of justice, and never adhered to when it would work mischief.”
That leaves undetermined the question which holding would promote justice or work mischief in the present case.
The case of Koltenbrock v Cracraft, 36 Oh St 584, discussing the time when a repeal of a statute' becomes effective states,
“When a statute, which repeals a prior statute on the same subject, is to take effect and be in force from and after a day named, it does not take effect until the expiration of the day named.”
In Arrowsmith v Hamering 39 Oh St 573, the Court in passing upon ithe question of the time when a legislative enactment should take effect, it being from and after its [passage, and applied to all cases hereafter brought, held,
“This act took effect on the day of its passage, and by presumption of law, from the commencement of that day, and not from its expiration.”
The Court there raises the same question we have before alluded to; by stating,
“This presumption will not prevail where it is in conflict with any right required in actual points of time on that day, before the act took effect. In such ease the exact, time in the day may be shown.”
This simply supports the rule that under certain conditions the day may be divided.
Returning again to 39 O. Jur., we find there stated,
“The term ‘day’ in law, embraces; the entire day, and refers to a day as a unit of time, not as an aggregation of a certain number of hours, minutes or seconds. In this sense, and for the purpose thus used, a day is not capable of subdivision into hours, minutes, or1 seconds, but is to be taken as a. whole.”
It is further stated on page 197' that the rule that the law knows no fraction of a day is true only in a limited sense where it will promote the right and justice of the cause. It is a mere legal fiction and is never allowed to operate against right and justice or work mischief or defeat a vested right..
In Schuck v State 50 Oh St 493, the Court construes the term of' “election day” as a whole day of' twenty-four hours and not in the-portion of the day during which the election is being conducted.
There are other cases cited on-page 196 of Ohio Jur. which we do not deem of sufficient pertinence to require citation. The question-involved in the case at bar does not refer to “days” but to months.
In 62 C. J., 968, et seq., we find various notations of interest. Corpus Juris on page 979 states the rule to be where a person is required to perform an act on or by a particular day, he is entitled to- *34 the whole of that day in which to act as the law will not add fractions of days in computing the prescribed time.
A month is defined to be a definite period of time commencing on the first day and ending on the last day. The calendar month is to be used in the interpretation of contracts and the month is to be counted irrespective of the number of days it may contain. Where the word “month” is employed in ■a contract it means a calendar month to be computed, not by counting days but by looking at the calendar ' and it runs from a given day in one month to a day of the corresponding number in the next of specified succeeding month. See also 26 R. C. L., pp. 734-738 for further discussion of this ■matter.
Counsel for appellees refer to Garelick v Rosen, 274 N. Y., 64, to the effect that a policy which by its terms is to expire on a certain day covers the full day on which it expires and a contract which by its terms expires on a certain day remains in force for the whole of that day unless, by its express wording, it is limited to a certain time of day upon which it expires.
Counsel for appellant cite a number of cases the first being Richardson v Insurance Company 137 So., 373, where it is held that the parties can contract for the performance by an agreed hour on a certain day and in such case the Jaw will take cognizance of a fraction of a day.
Counsel for appellant also cite .Appleman on Automobile Liability Ins., p. 14, to the effect that where a contract specifically provides for its commencement at noon and to end a certain period thereafter, it has been held in numerous cases that such a contract terminates at noon, no different period of termination having been specified.
They also cite Matthews v Continental Casualty Co., 93 S. W., 55, to the effect that a policy insuring against accident within one year from 12 o’clock noon, December 11, 1902, did not. cover an accident at 4 P. M., December 11, 1903.
Also Purvis v Comm. Cas. Co. (S. C.) 159 S. E., 369, to the .effect that a policy provided it should be in force for 12 months beginning at noon September 3, 1938, and where the accident occurred on the afternoon of that date, it was held that inasmuch as the insured was fatally injured a few hours after noon it would be an injustice for the Court to hold, nothing else appearing, that the insurance was in force during the whole of that day.
In the Richardson case, above referred to, the policy provided that it should commence and end at noon, but it further provided for a five day grace period and no provision was made as to the termination time of the grace period. It was held that the time standard was set by the first specific provision and that all periods of time under the policy were based thereon and that the policy lapsed at noon. See aslo Kennedy v Ins. Co. 76 S. W., 748.
Counsel for appellees point out that the several cases above referred to have provisions different from the case at bar which render them inapplicable and counsel give special attention to the case of Purvis v Commercial Casualty Co., 159 S. E., 369, pointing out in that case the Court deciding the same did not correctly interpret the cases upon which he relied. Counsel also point to the fact that Richardson v Insurance Co., supra, is not applicable because the policy specifically provided that it should commence and end at noon on a certain day.
In Garelick v Rosen 274 N. Y., 64 *35 it is held an insurance policy to expire on a certain day covers for full day of its expiration — contract prepared by the insurer construed favorably to the insured. Policy expiring November 11th at 12:01 A. M. — extension for one month to December 11th is extended for full day of December 11th. It is there held that an insurance policy which by its terms is to expire on a certain day covers for the full day upon which it expires and a contract prepared by an insurance company must be construed favorably to the insured and all ambiguities, if any, resolved in his favor. It is stated by the Court that an insurance policy which by its terms is to expire on a certain day covers for the full day upon which it expires. The Court states,
“We believe that it is a matter of common knowledge as well as a principle of law that a contract which, by its terms, expires on a certain day, remains in force for the whole of that day unless by its express wording it is limited to a certain time of the day upon which it expires. In the absence of an express limitation, the law does not take notice of a fraction of a day.”
The Court points out that it is a familiar rule where the construction of such contracts is prepared by the insurance company that it must be construed favorably to the insured and all ambiguities, if any, resolved in his favor. The question is what would an ordinary person in reading the endorsement understand, having in mind that he had applied for an extension of the policy for one month.
In Shroehmann v Insurance Co., 300 U. S., 435, it is held that where from the language of a policy there is doubt as to its construction, the doubt would be resolved in favor of the insured. The Court quotes with approval, on page 439, from Insurance Company v Hurni Packing Co. 264 U. S., 167,
“ ‘The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it.’
Without difficulty respondent could have expressed in plain words the exception for which it now contends. It has failed, we think, so to do. And applying the.settled rule, the insured is entitled to the benefit of the resulting doubt.”
While we are in some doubt, we arrive at the conclusion that the Court below was correct in interpreting the policy to the effect that the failure to pay the-premium on or before 12 o’clock noon, March 6, 1935, did not terminate the protection of the policy until the entire day of March 6th had passed and the accident having occurred at 11:30 P. M., the day of March 6th, so far as the expiration by reason of failure to pay the premium, the policy was in effect' until midnight of March 6th.
This disposes of the first and third assignments of error and the same will be overruled.
The other assignments relate to-those acts of the defendant, whose automobile was insured, which it is claimed render the policy invalid. There can be no doubt of' the proposition that in the present case the rights of the plaintiff rise-no higher than those of 'Monnin and that if he were guilty of any act, either before or after the aeci *36 ■dent, which would render the policy invalid as to him that the same :acts would render it invalid as to the plaintiff in this case.
The leading case upon this point, ■which involves §9510-3 GC now under review here, is Stacey v Fidelity & Casualty Co., 114 Oh St, 633, wherein it is held that the loss on account of a casualty covered by such a contract becomes absolute ■only in the sense that the payment of loss by the Company shall not depend upon the satisfaction by the assured of the final judgment against him for such loss.
In Luntz v Ohio Casualty Co., 135 Oh St, 225, the same principle is supported and it is held in Syllabus 3 that the purpose of the statute is to afford the injured person prompt benefit of the provisions of the policy.
“He succeeds to only the rights ■of the assured and can not recover in an action on the policy against the individual company if there has been such a breach of the contract by the assured as would prevent recovery by him.”
To the same effect is the much ■debated case of Conold v Stern, 138 Oh St, 352.
These principles require us to make a close analysis of the evidence touching upon the alleged failure of the insured to comply with the terms of the policy. It will be unprofitable to discuss at .length whether the act upon the part of the Insurance Company in accepting the premium would reinstate the policy for the simple reason that the policy itself has the provision to the effect, in the next to last paragraph, that a lapsed policy may be reinstated under certain conditions, “but the Company will not pay any loss sustained between the date of the lapse and the date of reinstatement.” This, as we read it, simply means that if the policy lapsed at 12 o’clock noon on March 6th and was reinstated by the Company accepting a check on the 8th of March, that there was an interval between 12 o’clock noon of March 6th and the day the check was accepted during which there was no coverage. The provision as to the reinstatement of the policy was definitely with the reservation that no interim obligation should bind the Company.
If we have correctly determined that the policy did not lapse at noon on March 6th, and was in effect until midnight of that day, then the insured was covered by the terms of the policy. If, however, we determine that the failure to pay the premium by noon of March 6th lapsed the policy, a subsequent reinstatement by the acceptance of a check on March 8th would not render the Company liable for the accident which occurred between noon of March 6th and the date of reinstatement.
The observation that we have just made calls' for further consideration of the terms of the policy in order to arrive at a conclusion as to whether or not it was the purpose of the policy to terminate the same at the instant the premium payment terminated. We must determine whether the policy in itself provided for a continuance in force even though the premium be not paid. This consideration is entirely aside from our holding that the policy continued in force till midnight of March 6th.
The evidence shows that this is a mutual company and that the defendant, Monnin, is one of its .members and that each policy holder is a member of the Company. The policy is a continuing policy and instead of entering into a new contract it continues in force as long as it is not cancelled. *37 A provision of the policy already quoted provides, in substance, that it shall become effective at 12:00 o’clock noon on the 6th day of September 1934 and shall continue in full force and effect for the intial term of six months and for such successive terms of six months each as the guarantee premium or the premium is maintained or restored and/or paid as required by the policy.
^ Beginning at the bottom of the middle page of the policy will be found a provision, in substance, 'that this policy may be cancelled by the Company only in the event the assured fails to comply with any requirement or becomes an undesirable risk, on which points the decision of the Company is final, in which event a written notice of cancellation shall be mailed to the assured and the Company shall refund at the close of the then current period the guarantee premium, after first deducting the pro rata premium for the portion of the term for which the assured shall have had insurance.
We first observe the provision that the policy shall begin at 12 o’clock noon on the 6th of September and shall continue in force for the initial term of six months and for successive terms as the premium is maintained or restored. The policy may be cancelled by the Company only in certain events concerning which the judgment of the Company shall be final, in which event a written notice shall be mailed to the assured.
These provisions seem potent in persuading the policy holder to pay the subsequent premium. There is no statement made in this paragraph that his policy shall terminate upon the failure to pay the premium, but on the contrary the policy shall remain in full force for the initial term o-f six months and for such successive terms of like time as the premium is maintained or restored and paid as required by the policy.
The Company is a mutual company to be operated for the benefit of its several stockholders. Instead of the provision being to the effect that the policy shall be cancelled immediately upon the termination of the premium period, it is stated that it shall coninue in full force for the initial term of six months and for succeeding terms as the premium is maintained or restored. Here are two very definite statements affecting the contractual provisions as to the termination of the policy. First, that it shall continue in full force during the period that the premium is maintained or restored. There is a definite cancellation. provision on the last page of the policy to the effect that in-case of failure to pay the premium, the policy shall be lapsed as of the date on which said payments become due and payable.
In order to give the policy holder warning as to the date upon which his premium is due and payable, two notices were sent out, both of which stated that the policy lapsed at 12 o’clock noon on March 6th. As before stated, this is no part of the provision of the policy and these notices, while protective of the interests of the Company, are beyond the terms-of the policy and have no force other than to warn the policy holder that his premium expired on March 6th with the gratuitous suggestion that it expired at noon on that date.
*38 *37 But we also have the provision of the policy that it may be cancelled in the event that the assured fails to comply with any of its requirements in which event a written notice of the cancellation shall be mailed to the assured and the Company shall make certain refunds. Under these conditions what *38 happened? Assuming that the termination of the premium period was 12 o’clock noon of March 6th, nothing was done except that on March 8th the Company received, appropriated and retained a check covering the amount of the premium for the next six months. The Company made no cancellation and did not notify the assured that his policy had been terminated for failure to comply with the requirements of the Company or that the assured had become an undesirable risk. If the premium had been exhausted, this payment and its acceptance certainly maintained or restored it during which time the policy continued in full force and effect. In addition to this, there was no action taken by the Insurance Company, as required by the terms of the policy above pointed out.
Simplifying this matter, it appears to us to be encompassed by the situation of a mutual company dealing with its membership and saying, it is true that you have been remiss in the payment of this premium on the precise moment contained in our notice, yet by virtue of the fact that you have paid up your premium and restored the same, the policy is continued in full force during the period "covered by the new premium paid without any lapse of coverage due to the incidental fact that for a period of two days your premium was not continuously maintained. By the subsequent payment, it was maintained or restored.
In these days when so much salesmanship is based upon short periods of payment of small sums, it is not an unusual or unreasonable provision for the creditor to say we will give you certain days of grace which may be measured in numbers of days mentioned in the policy or may be covered by a general provision that if you maintain your premium, the policy shall continue in force unless we notify you of its termination. Of course, the Court can not give an interpretation to the policy simply because it will lighten the burden of those who have entered into contracts beyond their capacity to fulfill nor interpret a contract contrary to its clear meaning. However we are admonished tha.t when an insurance company draws a contract which is subject to different interpretations it must be given that interpretation which favors the policy holder rather than the company.
Had the Company intended that the failure to pay the premium on the 6th of March at 12 o’clock high noon would constitute a cancellation of all obligations under the policy, it should have so stated. Instead of that, it received the check upon the 8th of March and placed it to its general credit and gave no warning then or later that it regarded the failure to pay as a cancellation of the policy. We are not persuaded that the Company makes a frank statement that the one dollar which was due from the policy holder when his policy is reinstated was not collected but was credited for the period which elapsed during which the Company claims there was no coverage. This period was only two days and apportioning the premium over an entire period of six months the daily, premium would be a little over 4c. and being for the two days an amount due of less than 10c, for which a credit was given of one dollar. We must recognize the fact that what the Company wanted was the six months premium and the continuation of the insured as a paying member of its Company. It was not concerned about an application for reinstatement or the pay *39 ment of one dollar for expense thereof.
It seems to us that the action of the Company is not in harmony with its now maintained posiion that the policy lapsed and that there was an application by means of a check for reinstatement. The more natural conclusion is that the Company regarded, the provisions of. the policy that the premium had been maintained or restored.
y If this be true, that the policy never lapsed, then we are relieved of a determination of what coverage existed between the 6th of March at noon and the 8th of March for the reason that the Company made no claim that there was a cancellation. We feel that the statement made by counsel for Appellee on page 26 of his brief to the effect,
“There is only one answer to the whole course of the conduct of the defendant company, and that is this, taking all the circumstances and the facts of this case together, it never considered this as a lapsed policy, and when it received the check it intended to and did, as shown by the termination date of the policy itself, consider this policy at all times in full force and effect.”
is supported by sound reasoning.
The remaining portion of the controversy centers about the various claims made by appellant that Monnin failed to comply with the provisions of the policy in reference to notice and that the plaintiff failed to bring her action within a year after having ascertained the amount due to her as provided by the policy.
In exploring the several claims of the parties, we have given attention to the cases cited • by each counsel. These cases have been so numerous that we can do no more than cite them.
The position of counsel for appellant is set out elaborately in his brief to the effect that the Court erred in his finding as to the failure to give notice; that the notice to a soliciting agent was insufficient; that there was no waiver of a written notice..
The most interesting claim made' is that the supplemental action was not commenced in the time limited by the policy. It is claimed that under the specific provisions of the policy it was provided that no action could be maintained to recover unless brought within 12 months after the loss was reduced to judgment by action against the assured and that the pleadings show that the supplemental action was commenced after 12 months had expired and that such action was barred by the limitation of the policy. To avoid the effect of this limitation the Court held that the saving clause provided in §11233 GC was applicable. This statute provides an additional time of one year to recommence actions filed within the proper time, but which failed “otherwise than upon the merits”.
Counsel for plaintiff argues in opposition to the position of the Court most skillfully. Among the cases that he cites, to which we have given attention, are Appelman v Insurance Company, 76 Oh St, 52; Barkley v Bus Assn., 109 Oh St, 585; Pelaia v Fire Insurance Company, 8 Abs, 124, especially directed to his claim that the saving statute was not applicable in this case.
We have given attention to these matters and might discuss them in detail were it not for the fact that this opinion is already too long.
Much is made of the fact that the insured did not give proper notice as required by the terms of the *40 ■contract to the Insurance Company. Without going 'into detail on that matter, we are of the opinion that the Company made such a •denial of its liability that the insured was relieved from following in minute detail the provisions of the policy as to notice.
We arrive at the conclusion that the Court was not in error in the ■determination of these questions •and that the right of the plaintiff to bring the action within the time which she did was saved to her under the provisions of §11233 GC that if the plaintiff fails otherwise than upon the merits and the time limited for the commencement of such action at the date of failure has expired, the plaintiff may commence a new action within one year after said date. The plaintiff brought her supplemental action against the defendant company in a separate action against it and upon demurrer it was held that under a recently amended statute she should have proceeded by supplemental petition. After this ruling of the Court she proceeded within a period of one year. We are of the opinion that she “fails otherwise than upon the merits”.
Counsel in this matter ' have been exceedingly diligent and skillful in arguing this question and we appreciate its difficulties.
We regret that either through ignorance or carelessness in handling the preliminary matters that that which might have been a .simple insurance transaction upon the part of the Insurance Company has developed into a complicated law suit. If the parties in this •case had followed the plain provisions of the policy and attended to those matters covered by the policy promptly, there need have been no such controversy such as developed1 ■in this case.
Judgment of the Court below affirmed.
HORNBECK, J., concurs.
BARNES, J., concurs in judgment.