ROBERT FULLERTON, Appellee, v. UNITED STATES CASUALTY COMPANY, Appellant.

**REFORMATION OF INSTRUMENTS: Evidence—Weight and Sufficiency.** Evidence attending the execution of a contract reviewed, and held, in view of the practical construction placed thereon by the parties, sufficient to show a mistake and the mutuality thereof, and consequent justification for reformation.

**INSURANCE: Policy—Construction—Insurance Against Accident Claims.** A policy of insurance which indemnifies the holder against claims for damages on account of bodily injuries *"accidentally suffered * * * by any person * * * by reason of the ownership. maintenance, or use"* of a described automobile, covers such a claim which arises out of the operation of the car *by the adult, dependent members of the policy holder's family*—such operation being with the consent of the owner of said car.

**REFORMATION OF INSTRUMENTS: Instruments Reformable—Practical Construction—Effect.** Reformation of an ambiguous contract so it will express a certain meaning is unnecessary, when the parties have mutually proceeded upon the assumption that such was the meaning of the contract.

**CONTRACTS: Construction—Irrevocable Practical Construction.** One who construes a contract as imposing an obligation upon him to appear in and defend an action against another, and, with full knowledge, does so, may not, in such litigation, rightfully revoke such construction and withdraw from the litigation, on the ·belated conclusion that he was wrong in his first construction of the contract.

**INSURANCE: Liability of Insurer—Duty to Defend—Refusal—Effect.** An indemnity insurer who is under contract obligation to appear and defend an action against the insured, and refuses to do so, and thereby compels the insured alone to adjust the matter, may not, on the plea that the policy only indemnified against a *"judgment,"* escape liability for the amount of a fair *settlement* effected out of court by the insured himself.

*Appeal from Polk District Court.*—LAWRENCE DEGRAFF, Judge.

MAY 20, 1918.

REHEARING DENIED SEPTEMBER 20, 1918.

THE opinion sufficiently states the case.—*Affirmed.*

*Sullivan & Sullivan,* for appellant.

*Nourse & Nourse,* for appellee.

WEAVER, J.—On July 14, 1913, the defendant, a liability insurance company, by its duly authorized agent, issued a policy of insurance to Robert Fullerton, plaintiff herein, indemnifying him for the period of one year against loss arising or resulting from claims for damages on account of bodily injuries sustained or alleged to have been suffered by any person or persons by reason of the ownership, maintenance, or use of a certain described Pierce-Arrow automobile, kept and used by said owner for the purpose of business calls and pleasure. Among other things, the policy provided that, in case any suit was brought to enforce a claim of that nature, plaintiff would promptly give notice thereof to the company, which would assume and conduct the defense in plaintiff's name, but at its own cost, whether the claim so sued upon was groundless or not. The company also reserved to itself the right to settle any claim at its own cost at any time. When the policy was issued, it was known and understood by the company that plaintiff did not himself drive or operate the car. At that time, and at the time of the accident hereinafter mentioned, plaintiff was a resident of the city of Des Moines, and head of a family. He had a son and daughter, both of whom had arrived at their majority, but were still living at home, as dependent members of his family. On July 3, 1914, while the policy was in full force, plaintiff's said son, Donald P.

Fullerton, accompanied by his sister and others, was driv-
ing the car upon the streets of Des Moines, for pleasure.
A collision occurred between said vehicle and a buggy oc-
cupied by one Hockenburg and wife and a friend, Mrs.
Jacobson, with the result that the persons last mentioned,
or some of them, were injured. The Hockenburgs having
made claim for damages, the insurance company came for-
ward and took charge of the negotiations for a settlement,
which was finally effected for the sum of $1,250, paid by the
insurer.

Mrs. Jacobson also presented a claim for damages on
her own account; and for a considerable period, negotia-
tions were carried on between her and the appellant, look-
ing to an adjustment of such claim without litigation, but
no agreement upon the amount to be paid was reached. In
December, 1914, Mrs. Jacobson brought suit upon her claim
in the district court of Adair County, naming as defendant
in such action Donald P. Fullerton, son of the plaintiff in
this action. Plaintiff promptly gave notice of this action
to the insurance company, which caused its own attorneys,
Sullivan & Sullivan, to appear and assume conduct of the
defense. As the district court of Polk County afforded a
more convenient venue for all parties, Sullivan & Sullivan
requested counsel for Mrs. Jacobson to dismiss the suit in
Adair County and begin it anew in Polk County, agreeing
that, if this was done, they would appear thereto for the
defense, and accept or waive service of formal notice. This
agreement was made and performed. The action in Adair
County was dismissed, and petition filed in the district
court of Polk County in time for the January, 1915, term
of the district court. Service of notice was accepted, De-
cember 23, 1914. On December 30, 1914, Sullivan & Sulli-
van, appearing for the defense, filed a motion to require
plaintiff to give a cost bond. On February 18, 1915, and
before the issues had been settled, Sullivan & Sullivan with-

drew their appearance for the defense, and appellant thenceforward took no part in said action. No explanation of such withdrawal appears in the record of that case; but the position taken by the appellant in the case at bar, as hereinafter shown, indicates that it acted on the theory that the claim asserted by Mrs. Jacobson in that action was not one against which the policy of insurance afforded any indemnity. When the defense had thus been abandoned by appellant, plaintiff herein employed other counsel, Nourse & Nourse, to appear in said cause, and later, by their assistance, effected a settlement by the terms of which Mrs. Jacobson accepted $1,500, paid by the plaintiff herein in full satisfaction and discharge of her claim for damages against both Robert Fullerton and Donald P. Fullerton. Thereafter, plaintiff brought the present action in equity, to correct the policy issued by the defendant, and to recover thereon the amount expended in satisfying the Jacobson claim, and in payment of counsel fees for services in that case after the defense thereof had been abandoned by the company.

In his petition, plaintiff sets out the facts substantially as hereinbefore related. He further avers that the policy was applied for and issued with the mutual agreement and understanding that it was to cover all damages and claims for damages resulting from injury to any person by the operation of said car when driven by his servant or any member of his family, and "if the contract as written is found not to be fairly susceptible of that construction, then it does not express the real contract between the parties, and it should be reformed or corrected to express such intent." The defendant denies the allegations of the petition, in so far as it charges any failure of the policy to express the contract of insurance, and denies that it has in any manner failed to perform its agreement. It admits the issuance of the policy sued upon, but alleges that the injuries

to the Hockenburgs and Mrs. Jacobson occurred while the car was being driven by Donald P. Fullerton, plaintiff's adult son, and that such injuries created no liability on the part of the plaintiff herein against which the policy undertook to indemnify him.  As a further answer, it is alleged that, if plaintiff paid damages to Mrs. Jacobson, as alleged, it was a purely voluntary act on his part, and defendant is under no contract obligation to reimburse him for such expenditure.

Trial to the court upon the issues thus joined resulted in plaintiff's favor, and a decree for the relief prayed was entered.  The defendant appeals.

I. The first proposition argued by counsel is that plaintiff failed to make a case for reformation of the policy of insurance.  It is fundamental, of course, that, to be entitled to equitable relief of this kind, the party asking it must show, not only that the alleged mistake occurred, but also that it was mutual.  In other words, it must be made to appear that, by mistake, the contract as written fails to express the mutual intent of the parties; and if the mistake be denied, the fact must be established by a clear and satisfactory preponderance of the evidence.  Basing its contention upon the law as thus stated, appellant argues that no mutual mistake appears to have been made in the terms of the policy as written.

1. REFORMATION OF INSTRUMENTS: evidence: weight and sufficiency.

If plaintiff's case were left to rest solely upon his own unaided testimony as a witness on the trial below, this objection would have to be held good; for, in some respects, his statements of what occurred when the insurance was taken out are vague and uncertain; but, taking all the circumstances attending that transaction together with the practical interpretation put upon the policy by the company, as well as by plaintiff, from the time of its issuance down to the date when the company withdrew from the Ja-

cobson suit, there is little room for doubt that both considered and treated the contract as providing indemnity against claims for damages arising from or caused by the operation of the plaintiff's car in the course of its ordinary use, as specified in the policy, without regard to whether the car was being driven by the plaintiff himself or by any other member of his family, acting with his permission or by his authority. While plaintiff does not attempt to state the language used in the negotiations between him and the defendant's agent, he says the subject was discussed, and that he understood that the policy to be issued would cover the use of the car by the members of his family; and that, if any accident occurred in such use, the company undertook the defense of damage claims so arising. The agent does not deny that such was the mutual understanding. He speaks of his general custom to have the terms of insurance issued by him clearly understood, but says: "I don't know what was said at this particular time. I can't remember." Further, with reference to the writing out of the policy as issued, he says:

"I signed Exhibit A (the policy), and the blanks were filled out by a clerk under my direction. That is, I gave the policy writer the information to fill out the blanks. Q. And did that, as you understand it, cover the items that you gave him or her to put in the policy as expressed in this exhibit? A. I think so. Q. And this, at the time, expressed what you thought the policy ought to be? A. At the time the policy was issued. Q. That is what you intended to have in the policy, just as it appears now? A. At the time the policy was issued."

It does not even appear that the witness read the policy, after it was filled out by his clerk. He does say that he was told, or that he knew the fact to be, that Mr. Fullerton did not himself drive or operate the car, and that he so informed the company; but aside from this, he states

nothing from his own independent recollection as to the terms discussed between him and the plaintiff. The policy itself describes the use to which the car is devoted as being "for business calls and pleasure." In other words, it was a family car—such a car as, in most families having such a convenience, is ordinarily used, and is expected and intended to be used, quite indiscriminately, not only by the family head, but also by his wife, sons, and daughters, so far as they are reasonably competent so to do. That such was the understanding of the company is sufficiently shown by a clause in the policy which exempts the insurer from liability for injuries when the car is being driven by anyone under sixteen years of age.

Still further, as bearing upon the understanding by the company as to the nature of its agreement, we find, as already noted, that, on being notified of the accident, it promptly responded, took charge of the negotiations for settlement with the Hockenburgs, and in fact made such settlement, paying a very substantial sum to effect it. It sought a similar settlement with Mrs. Jacobson, but failed to reach an agreement on terms; and when she brought suit against plaintiff's son, the driver of the car, it again responded to plaintiff's notice and took up the defense, and not until a later date did it discover a reading or construction of its policy which would relieve it from liability. That, during all this time, plaintiff believed and acted upon the belief that his policy covered a case of this kind, is very evident; and that defendant gave him every reason to understand that such was its own construction of their contract, is equally clear. We are of the opinion, therefore, that, if any reformation of the policy was necessary to entitle plaintiff to a recovery, the proved facts and circumstances to which reference has been made, afford ample support for a decree granting such relief.

II. We are not, however, persuaded that a reformation

Vol. 184 IA.—15

of the policy was necessary to plaintiff's recovery. The contract, as written, indemnifies the plaintiff against claims

for damages on account of bodily injury "accidentally suffered or alleged to have been suffered * * * by any person or persons by reason of the ownership, maintenance, or use" of the described automobile. This, clearly, does not limit the indemnity to claims for damages on account of injuries occurring while the insured is personally using the car, but extends to all claims of that nature, made by reason of his ownership or maintenance thereof. While we have held that the owner of an automobile is not liable for injury caused to another by the neglect of a person, even a member of his own family, who attempts to operate the car without the authority, express or implied, of such owner, yet we have never held that one who purchases and owns an automobile for family use, and permits it to be used by the dependent members of his family for their own pleasure, may not be held liable for their neglect in such use of it. *Reynolds v. Buck,* 127 Iowa 601; *Sultzbach v. Smith,* 174 Iowa 704; *Kayser v. Van Nest,* 125 Minn. 277; *Birch v. Abercrombie,* 74 Wash. 486; *Ploetz v. Holt,* 124 Minn. 169 (144 N. W. 745); *Hays v. Hogan,* 180 Mo. App. 237 (165 S. W. 1125). On the contrary, we think it may well be said that, when a car owner gives it over to the use of his family, and permits it to be operated by the dependent members thereof, the individuals to whom it is so entrusted may properly be considered his representatives or agents, in such a sense that their negligence in the use of the car is imputable to him, and that persons injured by reason of such negligence, without fault on their own part, may hold such owner liable for damages so sustained; and if such be the law, then the policy in suit indemnifies the plaintiff against it. See cases last above cited. Indeed, the clause in the policy already mentioned, exempting the

2. INSURANCE: policy: construction: insurance against accident claims.

company from liability when the accident occurs where the car is being driven by anyone under sixteen years of age, seems to be an implied concession or recognition of such liability where the driver is any member of the family over that age.

In avoidance of this proposition, appellant pleads and relies upon the admission that Donald P. Fullerton was of legal age at the time of the accident. It is true that the son had arrived at his majority. He was, however, a young man, just out of school, living at the parental home, a member of the family, and as yet dependent upon his father. Under such circumstances, the mere fact that he was more than 21 years old would not require the application of any other rule of law than we have already stated.

Moreover, it is to be said that, ordinarily, a contract the meaning or effect of which has been settled by the practical interpretation placed thereon requires no reformation, but may be enforced according to such meaning. In other words, where the evidence sufficiently shows that parties to a contract have both so construed it as to import a liability on part of either, and both have acted thereon in accordance with such understanding, such construction will be adopted by the court. *Daily v. Minnick,* 117 Iowa 567; *Pratt v. Prouty,* 104 Iowa 419; *St. Louis Gaslight Co. v. City of St. Louis,* 46 Mo. 121; *Fuller Bros. T. L. & B. Co. v. Fidelity & Cas. Co.,* 94 Mo. App. 490 (68 S. W. 222).

3. REFORMATION OF INSTRUMENTS : instruments reformable : practical construction : effect.

Counsel remind us, at this point, that the rule by which effect is given to the conduct of the parties to the contract, as indicating the proper construction to be placed upon its terms, is applicable only where the written agreement is ambiguous or doubtful; and they say that the writing now under consideration is clear and unequivocal. Admitting the general correctness of the rule that resort is to be made

to the practical construction of a contract by the parties
thereto only where there is some degree of obscurity or
doubt in the language employed, we cannot say that the
policy in suit is, in all respects, so free from ambiguity as
to exclude consideration of the evidence referred to.  For ex-
ample, the policy contains a provision which exempts the
insurer from liability where the injury occurs while the
car mentioned in the policy is "being driven by any person
under sixteen years of age," or while such car "is being used
for any other purpose other than that specified in the
schedule."  The schedule referred to describes the permis-
sible use of the car as being "for business calls and pleas-
ure."  Does the exemption of the insurer where the driver
is under sixteen years of age imply an admitted liability
where the driver is a member of the family of the insured
over sixteen years of age?  Again, the limitation of the use
of the car to "business calls and pleasure" is very general
and indefinite, if not elastic, and affords a very appropriate
instance for considering the attitude and conduct of the in-
surer with reference thereto.  Are the "business calls"
mentioned those strictly personal to the owner, or do they
include those of his wife and children and members of his
family?  Is the use of the car for "pleasure" a use for *his*
pleasure alone, or does it include use by members of his
family over sixteen years of age for their pleasure, or for
the pleasure of their guests and friends to whom they ex-
tend the ordinary courtesies of social life?  Again, there
is a clause of the policy which provides that, when *any*
accident happens, the assured shall at once notify the com-
pany; and, if "any claim is made on account of such acci-
dent," like notice shall be given; and "if any suit is brought
to enforce such a claim," the company, on notice thereof,
"shall defend such suit," etc.  The terms "any accident,"
"any claim," and "any suit," are very broad; and although,
when construed solely in connection with all the terms of

the policy, and without reference to extrinsic circumstances, they could properly be restricted within the narrow limits for which appellant contends, yet such limitations are not so clearly expressed as to exclude all room for construction. In other words, if the language be open to construction at all, we can conceive of no sound reason for not applying the rule as to practical construction of the parties, if there be any evidence showing such fact.

For the reasons stated, we are satisfied that the trial court correctly interpreted the contract of insurance.

III. We are further disposed to the view that, the insurance company having, with full knowledge of the facts, undertaken to defend against the claim and suit of Mrs.

4. CONTRACTS: construction: irrevocable practical construction.

Jacobson, at its own cost and on its own responsibility, it could not, while the case was still pending and undetermined, rightfully abandon it, for no better reason than its belated conviction that the policy did not impose upon it the duty to assume such defense. The company had not only bound itself to assume the defense of "any claim" against which it undertook to indemnify the plaintiff, but had also carefully excluded him from all right to act independently of the company in the matter of such suit, by a provision in the policy that the "assured shall not voluntarily assume any liability, either before or after the accident, nor shall he, without the written consent of the company, incur any expense or settle any claim except at his own cost, nor interfere in any negotiation for settlement or in any legal proceeding conducted by the company on account of any claim." When, therefore, it was notified of the accident, and of the claims of the Hockenburgs and Mrs. Jacobson, the company was called upon to act: either to deny that it was under any obligation in the matter, and leave the plaintiff and his son to conduct the defense in their own way and upon their own

responsibility, or to concede such obligation, and itself assume entire responsibility for making a defense or settlement, as it should find expedient. It accepted the latter alternative, took the business out of the hands of the insured, made its own settlement with the Hockenburgs, and took exclusive control of the defense to the suit of Mrs. Jacobson. Such conduct of the parties was tantamount to an agreement or mutual concession that the policy was intended to cover these claims for damages, and, both parties having proceeded on that basis to a settlement with the Hockenburgs, and on to a point midway in the Jacobson suit, the insurer will not be permitted then to change front, abandon a defense it had undertaken, and escape liability, on the plea that it has mistaken the nature of its obligation. If a precedent for such holding be needed, it may be found in a well-considered decision by the New Hampshire court (*Sanders v. Frankfort M., A. & P. G. Ins. Co.,* 72 N. H. 485 [57 Atl. 655]), where, speaking upon a very similar question, it is said:

"The view that the contract means that the insurance company, after taking control of the proceedings in a suit against the assured, cannot be thereafter discharged, except by payment of the indemnity to the assured, or securing his discharge from the claim, is thought to best conform to the intent of the parties, and is adopted."

See, also, *Lombard v. McGuire,* (N. H.) 97 Atl. 892. Quite in point, also, is *Fuller Bros. T. L. & B. Co. v. Fidelity & Cas. Co.,* 94 Mo. App. 490 (68 S. W. 222). There, the defendant had insured an employer against liability for personal injuries to his employes. One Goza, an employe, being injured in an operation of an elevator, made claim for damages, and the insurer, on notice from the employer, assumed the defense and conducted it to final settlement. Later, another employe, one Hobert, suffered a similar injury in the same elevator, and also made claim for dam-

ages; but the insurer denied liability, on the theory that the
policy did not cover injuries so arising; but the court, re-
ferring to the company's act in defending and settling the
Goza case, said:

"We are thus furnished with the indubitable evidence of
the meaning the, defendant assigned to the policy. As said
in the case of *St. Louis Gaslight Co. v. City of St. Louis*, 46
Mo. 121: 'In a case of that kind, whose interpretation
should prevail? If the court gives one differing from that
understood by the parties, it makes a new agreement—the
very thing most to be avoided. If it leaves the parties to
be governed by their understanding of their own language,
it in effect enforces the contract as actually made. That
they should be so permitted to construe their own agree-
ment, accords with every principle of reason and justice.'
It is obvious, from the acts and declarations of the parties,
that they understood the policy to cover the liability of
plaintiff to its employees for injuries suffered by them while
engaged in work, in or about its elevators; and, that being
so, it becomes our duty to adopt that understanding as the
proper guide to its meaning."

The rule so applied is manifestly a reasonable one, and
no principle of law is suggested by counsel which prevents
its application to this case.

IV. We are cited to a clause of the contract to the ef-
fect that the right of the insured to maintain an action
against the company is limited to cases of "loss actually
sustained and paid in money in satisfaction
of a judgment after trial of the issue," and
it is said that the payment to Mrs. Jacob-
son by plaintiff was by way of a settlement,
and not in satisfaction of a judgment. But this provision
can avail the appellant nothing in this case.. It repudiated
its obligation to assume and carry the defense to final judg-
ment; and, having abandoned the case, it left the assured

5. INSURANCE:
liability of in-
surer: duty to
defend: re-
fusal: effect.

at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible. He pursued the latter course, secured a settlement, paid the money, and received from Mrs. Jacobson a discharge in full of all claims against himself and son on account of her injury. It is admitted in the record that the settlement so made was a reasonable one, that the damages paid were not excessive, and that the attorney fee paid Nourse & Nourse for services in conducting the defense after the withdrawal of Sullivan & Sullivan, is also reasonable.

We find nothing in the record requiring a reversal of the decree of the district court, and it is, therefore,—*Affirmed.*

PRESTON, C. J., GAYNOR and STEVENS, JJ., concur.