Mary P. LEARY, Plaintiff,

v.

BANKERS LIFE AND CASUALTY COMPANY, Defendant.

No. 16171–4.

United States District Court
W. D. Missouri, W. D.

April 6, 1967.

Charles C. Shafer, Jr., Kansas City, Mo., for plaintiff.

James W. Humphrey, Jr., Kansas City, Mo., for defendant.

AMENDED MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

ELMO B. HUNTER, District Judge.

The Court has previously entered a judgment in the above styled cause in favor of plaintiff. This matter was presented to the Court and decided on motions for summary judgment. Defendant has filed its motion to set aside that judgment and to enter in its place a judgment for defendant. The Court finds the points raised by defendant are without merit and that the judgment must stand as entered.

The motion filed by defendant indicates that defendant does not fully understand the basis upon which the Court determined that the policy in question was in effect at the time of Robert Leary's death. Therefore, upon its own motion, the Court has prepared and now files this amended memorandum and order setting forth with more particularity the reasons upon which it based the judgment for plaintiff. A stipulation has been filed in which the parties agree that the original termination clause in the Master Policy is the same as that contained in the Certificate previously made a part of the record of this cause.

Briefly, the undisputed facts are that the deceased, Robert Leary, was the insured on a special risk group policy issued to the Ryder System, Inc., and plaintiff was the designated beneficiary of same. At the time Robert Leary was named as the insured he was employed by Ryder Truck Lines, Inc. In December of 1964 Robert Leary submitted his resignation and the same was accepted by Ryder Truck Lines. On January 1, 1965, at or about 10:20 a. m. Robert Leary was fatally injured in an automobile accident. The only question remaining in this case is one of law, namely, was the policy which defendant had issued still in effect at the time of the fatal accident? The Court has carefully considered the briefs and other materials submitted by the parties to the extent they bear upon this issue (including defendant's MSJ "H") and finds that the policy was in effect at the time of the accident.

The parties are in agreement that Florida law applies (see defendant's suggestions in support of motion for change of venue and plaintiff's brief in support of motion for summary judgment). Neither side has provided the Court with a Florida case directly in point nor has the Court's own research disclosed any. Nor has the Court found a case directly in point from any other jurisdiction.

The particular clause which gives rise to this action is found in Endorsement Number 4, the pertinent part of which is set out below:

### TERMINATION

All coverage under this policy shall automatically cease upon the cancellation of same and coverage for each Insured person shall automatically cease on the first day of the month following termination of his or her employment with the Employer.

The question presented to the Court is, "When on the first day?" The defendant contends that, when other clauses are taken into consideration, the time must be 12:01 a. m. on the first day of the month. If this is the case, then from the undisputed facts it is clear there can be no recovery by plaintiff. Plaintiff contends that the time must be the end of the first day of the month. If this is the case, then there is coverage and plaintiff must succeed.

The other clauses to which defendant makes reference are set out at this point. On the face of the Master Group Policy is contained this language:

### POLICY PERIOD

This policy takes effect August 1, 1964 and continues in effect until August 1, 1967. All periods of insurance hereunder shall begin and end at 12:01 a. m. Standard Time at Miami, Florida.

On Endorsement Number 4, following the termination provision quoted previously, is the following language:

This Endorsement is attached to and made a part of Policy No. SR 82,226 issued to Ryder System, Inc., and/or Allied, Affiliated or Subsidiary Companies.

This Endorsement takes effect August 1, 1964 and expires concurrently with said Policy and is subject to all the provisions and conditions of the Policy not inconsistent herewith.

The termination provision in Endorsement Number 4 was substituted on October 5, 1964, for the termination provision in the Schedule of Insured Persons which stated:

*TERMINATION:* All coverage under this policy shall automatically cease upon the cancellation of same and coverage for each Insured Person shall automatically cease upon the termination of his or her employment with the Employer.

■ As was mentioned previously the Court has not found a case from any jurisdiction which is directly in point. Therefore, the Court has applied well established general rules of law to the language of the policy in question. As a general rule the law does not consider fractions of a day, 52 Am.Jur. 339, Time § 15. However, "in the majority of cases involving accident * * * policies with definite provisions as to the time on which the risk was to commence or expire, the courts have computed the time of the duration or termination of the policies in fractions of days * * *." 29 Am. Jur. 692, Insurance § 319. The question then presented is this: Is there definite language in the pertinent portions of the policy in question to require the Court to take into account a fraction of a day? The Court concludes that there is not. The Court is not persuaded that factually this case comes within the scope of those cases in which fractions of a day were considered, and this will be pointed out in more detail later in this opinion.

■ Looking at the language in the Master Group Policy it is clear that the time 12:01 a. m. appears only once. It appears on the face of the Master policy under the heading POLICY PERIOD, and is within the sentence which begins, "All periods of insurance hereunder". The only other matter under the heading POLICY PERIOD in the Master policy states the policy takes effect August 1, 1964, and continues in effect until August 1, 1967. There is no mention of time in either the original termination clause or in Endorsement Number 4. From the heading in the Master Policy ("Policy Period") and the language thereunder accompanying the time 12:01 a. m. (and keeping in mind that this is a master

*group* policy under which numerous individual certificates are to be issued), it appears clear to the Court that the time 12:01 a. m. is used therein only with reference to the beginning and end of the basic three year period of coverage within which time the master policy is effective and certificates can be issued to individual insureds thereunder. The Court is not persuaded that the general language of the Master policy making mention of 12:01 a. m. controls the meaning and effect of the termination clause.

■ Any contention by defendant that the policy is also susceptible of the interpretation defendant suggests gives no comfort to defendant. This is, at best, an admission that the policy is ambiguous. Applying Florida law the Court would be bound to construe an ambiguous provision liberally in favor of the insured so as not to defeat, without necessity, the claim asserted under the policy, Shoaf v. World Insurance Company, 162 F.Supp. 654 (N.D.Fla.1958). If the Court were to find that the policy is ambiguous it would apply the general rules of construction to ascertain the true meaning of the policy. As stated in 29 Am.Jur. 630, Insurance § 247, "One of the most satisfactory tests for the ascertainment of the true meaning of an insurance contract is to place oneself in the position of the contracting parties and to view all the facts and circumstances surrounding them in order to determine what they meant by the phrases and words of the instrument. Thus, the intention of the parties to an ambiguous insurance policy is to be ascertained by reference to the facts and circumstances surrounding the making of the contract, as well as by that which is within the four corners of the contract. The test to be applied in construing the language of an insurance policy is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would have understood them to mean." One of the circumstances which would then be available for the Court's consideration would be the termination clause originally in the policy and the relation of the general provision

concerning 12:01 a. m. to it. The Court believes that such an approach would be proper in this case since Endorsement Number 4 (the present termination clause) contains no more reference to time than did the original termination clause which was silent on that matter. There is nothing in the record to indicate that the general phrase on the face of the Master policy referring to 12:01 a. m. was to apply to the original termination clause any less than defendant now contends it is to apply to the substitute clause. The original termination clause was expressly "subject to all provisions, conditions and limitations of the Master Group Policy." The Endorsement likewise was "subject to all the provisions and conditions of the Policy not inconsistent herewith." Since the general phrase on the Master policy remains unchanged, its effect upon the termination clause should also remain unchanged.

Under the original termination clause all coverage was to cease automatically "upon termination of his or her employment with the Employer." If the general reference to 12:01 a. m. in the Master policy were read into that termination clause it would result in almost complete freedom from liability for defendant. A brief illustration is appropriate. Assume A is the named insured in the policy with the original termination clause. Assume further that A is killed in an accident at 10:20 a. m. on January 1, 1965. There can be no question but that A's death in and of itself terminated his employment. There would be no action required on the part of the employer to terminate A's employment in such a case. If a court were required to read into the termination clause the 12:01 a. m. provision, it is clear that A would not be covered in this case, for his death terminated the employment on January 1, 1965, and the fatal accident occurred some hours after 12:01 a. m. on January 1, 1965. It seems apparent that no court would so apply the 12:01 a. m. provision, and this Court is confident that defendant would never have urged such an application. Rather, it is clear that the original termination clause would have been given

a reasonable meaning so as to extend coverage to A in the above illustration, and the coverage under the policy would have ceased not earlier than immediately after A's death. The above situation illustrates that the general provision dealing with 12:01 a. m. in the Master policy was not meant to apply to the original termination clause but applied only to the three year expiration date of the policy. The Court is not persuaded that the substitution of Endorsement Number 4 for the original termination clause in any way changes the meaning and effect of the general provision regarding 12:01 a. m. in the Master policy. It still applies only to the three year expiration date of the policy. The mere fact that Endorsement Number 4 contains the word "day" and the original termination clause spoke only in terms of "termination of * * * employment" does not alter the situation. "Termination of * * * employment" must also occur on a day.

Another factor which the Court would be free to consider if it were to find the policy ambiguous is the reference to the time 12:01 a. m. contained in the Certificate issued to the insured Robert Leary. On the face of the Certificate, the time 12:01 a. m. appears next to the heading PERIOD which also contains the dates August 1, 1964, and August 1, 1967. The time 12:01 a. m. thereon appears in the phrase, *"both* days at 12:01 A.M." (emphasis supplied). This would further confirm that if the policy were held to be ambiguous it would have to be construed to mean that the 12:01 a. m. refers only to the base period of three years.

Further support for plaintiff's position comes from one of the cases upon which defendant relies, Cooper v. Foresters Underwriters, 2 Utah 2d 373, 275 P.2d 675 (1954). In the Cooper case the plaintiff was trying to put herself within the provisions of the policy by use of the grace period following the due date for premium payment. The policy expressly provided that all periods of insurance shall begin and end at twelve o'clock noon of the last day of the month and all premiums were required to be paid in advance. The Court determined that the grace period began running at noon on the date the premium payment was due and expired at noon 31 days thereafter. In rejecting plaintiff's contention that the time should run to midnight of the last day of the grace period, the majority of the court stated, at 676, "In the case [cited by plaintiff] it was held that the provision beginning and ending the insurance period at noon did not control a provision requiring five days' notice for cancellation where there was no evidence as to the time of day that notice was given. The distinction between the notice provision [for cancellation] and the grace period provision is obvious; the former has no real relation to the period stipulated for insurance coverage whereas the latter is entirely dependent upon the expiration of the insurance period for its existence." The same can be said of the termination clause in the case at bar. The provision for terminating coverage at a time after the insured leaves the employment of the employer who carries the group policy is in no way dependent for its existence upon the stipulated base period of three years' coverage. The purpose of the termination clause in the policy in question is very similar to the purpose of a cancellation notice provision—each is designed to give the insured an opportunity to make arrangements for new insurance coverage before his present coverage expires. If defendant wanted the coverage to cease at 12:01 a. m. on the first day of the month following termination of employment (or on the last day of the month in which employment terminated as defendant's brief at page 9 indicates) defendant could and should have expressly provided so in the termination clause or made specific reference to the termination clause when 12:01 a. m. was mentioned. Under the circumstances of this case the Court will not presume this was the defendant's intention and the insured's understanding of the policy.

The case of Moynes v. National Security Corp., 272 F.2d 835 (7th Cir. 1959),

which deals with a cancellation clause, seems to be more in point with the facts of the case at bar than do the cases cited by defendant. The cases cited to the Court by defendant involve attempted extensions of the base period of coverage by use of language in grace period provisions, renewal provisions, and the like. They do not deal with termination clauses. For this reason the Court finds they are not persuasive on the issues involved in this case.

Therefore, it is ordered that plaintiff's motion for summary judgment be, and hereby is, sustained at defendant's costs.

It is so ordered.