**BANKERS LIFE AND CASUALTY CO.,**
Appellant,

v.

**Mary Patricia LEARY, Appellee.**

**No. 18833.**

United States Court of Appeals
Eighth Circuit.

Dec. 29, 1967.

James W. Humphrey, Jr., of Kuraner, Oberlander, Lamkin & Dingman, Kansas City, Mo., for appellant.

Charles C. Shafer, Jr., Kansas City, Mo., for appellee.

Before VAN OOSTERHOUT, ME-HAFFY and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

This is an appeal from a diversity action brought in the Western District of Missouri before Judge Hunter. The facts are undisputed. Robert Leary was employed as an officer of Ryder Truck Lines, Inc., a Florida corporation. He was covered by a Special Risk Group Insurance Policy carried by Ryder with Bankers Life & Casualty Company. On December 16, 1964, Leary tendered his resignation which was accepted by Ryder. At about 10:20 A.M., on January 1, 1965, he was involved in a fatal automobile accident. His widow, and named beneficiary, Mary Leary, brought an action to recover on the group insurance policy. Her motion for summary judgment was granted and, subsequently, an order was filed awarding her the face amount of the policy ($100,000), plus interest. We affirm the District Court.

The single question before the District Court and on appeal is whether Robert Leary was covered by the group policy at the hour and minute he was killed.

The termination clause in effect at the time of Leary's death provided:

"All coverage under this policy shall automatically cease upon the cancellation of same and coverage for each Insured Person shall automatically *cease on the first day of the month following termination of his or her employment with the Employer.*" (Emphasis added.)

The District Court, in granting the appellee's motion for a summary judgment, held that coverage did not cease until the end of the first day of the month. In reaching this decision, it relied on the general insurance law[1] that when no particular hour is stated, a reference to a given day means the whole day. Moynes v. National Surety Corporation, 272 F.2d 835 (7th Cir. 1959); Greulich v. Monnin, 142 Ohio St. 113, 50 N.E.2d 310 (1943); 9 Couch, Insurance § 39:232 (1962).

Bankers contended in District Court, and contends here, that Leary's coverage terminated at 12:01 A.M., January 1, 1965. It relied on the "POLICY PERIOD" clause on the face of the Master Policy to support its argument:

"POLICY PERIOD

This policy takes effect August 1, 1964 and continues in effect until August 1, 1967. *All periods of insurance hereunder shall begin and end at 12:01 A.M., Standard Time at Miami, Florida.*" (Emphasis added.)

The District Court was not persuaded that "the general language of the Master Policy making mention of 12:01 A.M. controls the meaning and effect of the termination clause."[2] This view is sup-

---

1. This is a diversity action and, as such, the parties agree that Florida law is controlling. However, as the District Court indicated for the critical issues in this case, no Florida law has been found.

2. "Looking at the language in the Master Group Policy it is clear that the time 12:01 a. m. appears only once. It appears of the face of the Master policy under the heading POLICY PERIOD, and is within the sentence which begins, 'All periods of insurance hereunder'. The only other matter under the heading POLICY PERIOD in the Master policy states the policy takes effect August 1, 1964, and continues in effect until August 1, 1967. There is no mention of time in either the original termination clause or in Endorsement Number 4. From the

ported by Moynes v. National Surety Corporation, supra, and Penn Plate-Glass Co. v. Spring Garden Ins. Co., 189 Pa. 255, 42 A. 138 (1899).

In *Moynes,* the policy provided:

" 'The Policy Period shall be from April 5, 1957 to: April 5, 1958 at 12 o'clock noon, standard time, at the location of the premises.' * * *

" '13. Cancelation [sic]. * * * This policy may be canceled by the company by mailing to the named insured * * * written notice stating when *not less than five days* thereafter such cancelation [sic] shall be effective. * * * [T]he effective date of cancelation [sic] stated in the notice shall be the end of the policy period. * * * ' " (Emphasis added.)

Id. at 272 F.2d 836.

The company mailed the following notice of cancellation to the insured:

" 'Notice Is Hereby Given That The Policy Or Bond Designated Herein Is Canceled In Accordance With Its Terms, Such Cancellation To Be Effective On The Date Set Forth Herein. *At The Hour On Which Such Policy Or Bond Became Effective,* Or At Such Other Hour, If Any Specified In The Cancellation Provisions Of Such Policy Or Bond. * * * ' " (Emphasis added.)

Id. at 836.

The notice also contained a box captioned "Cancellation Effective." In it, the words "March 10, 1958" had been typewritten. The loss occurred at 6:00 P.M. on that date. The insurer argued that by the virtue of the "Policy Period" clause and the express terms of the notice of cancellation, the policy terminated at noon March 10, 1958. The Court rejected this argument stating:

"The fact that the policy provides on its face that it shall extend from April 5, 1957 to April 5, 1958 at twelve o'clock noon cannot be *inferentially* incorporated into other policy provisions, including the cancellation clause. See, Garelick v. Rosen, 1937, 274 N.Y. 64, 66–67, 8 N.E.2d 279, 280; Penn Plate-Glass Co. v. Spring Garden Ins. Co., 1899, 189 Pa. 255, 259–260, 42 A. 138; Malin v. Netherlands Ins. Co., 1920, 203 Mo.App. 153, 156–157, 219 S.W. 143, 144; Gordon v. Home Indemnity Co., 1936, 121 Pa.Super. 241, 248–250, 183 A. 427, 430–431."

Id. at 837.

In *Penn Plate,* the insurer gave notice of cancellation pursuant to a five-day notice provision. The policy provided that the base term of insurance should begin and end at noon of given dates. The Court held that the "noon" provision did not apply to cancellations:

"The policy stipulates that the insurance under it shall begin at noon and expire at noon of the days named. Such an agreement is entirely lawful, and, of course, becomes the special rule for the fixing of dates so referred to. But it is by no means clear that it is intended to apply as the rule for all computations of time under the policy. The object of the clause is to fix with precision the term covered by the insurance, and thereby to avoid possible dispute on the fundamental basis of any liability for loss. The same reason does not apply with equal force to the question of time on collateral matters, such as * * * the five-days notice of cancellation, as involved here."

heading in the Master Policy ('Policy Period') and the language thereunder accompanying the time 12:01 a. m. (and keeping in mind that this is a master *group* policy under which numerous individual certificates are to be issued), it appears clear to the Court that the time 12:-01 a. m. is used therein only with reference to the beginning and end of the basic three year period of coverage within which time the master policy is effective and certificates can be issued to individual insureds thereunder. * * * " 
Leary v. Bankers Life and Casualty Company, 263 F.Supp. 565, 567–568 (W.D. Mo.1967).

Id. at 42 A. 139.

The District Court's finding that the termination clause was not governed by the language of the "POLICY PERIOD" clause in the Master Policy is further supported by the fact that the questioned clause was phrased in Leary's certificate of insurance so as to indicate that 12:01 A.M. referred only to two dates, August 1, 1964 and August 1, 1967. It read:

"PERIOD: From August 1, 1964 to August 1, 1967 *both days* at 12:01 A.M. Standard Time at the address of the employer." (Emphasis added.)

The District Court's decision also demonstrated that the construction of the termination clause urged by Bankers would have resulted in an absurdity as that clause[3] was written when the insurance contract was originally issued:

"Under the original termination clause all coverage was to cease automatically 'upon termination of his or her employment with the Employer.' If the general reference to 12:01 a.m. in the Master policy were read into that termination clause it would result in almost complete freedom from liability for defendant. A brief illustration is appropriate. Assume A is the named insured in the policy with the original termination clause. Assume further that A is killed in an accident at 10:20 a.m. on January 1, 1965. There can be no question but that A's death in and of itself terminated his employment. There would be no action required on the part of the employer to terminate A's employment in such a case. If a court were required to read into the termination clause the 12:01 a. m. provision, it is clear that A would not be covered in this case, for his death terminated the employment on January 1, 1965, and the fatal accident occurred some hours after 12:01 a.m. on January 1, 1965. * * *"

Bankers cites Union Trust Co., etc. v. Continental Cas. Co., 90 U.S.App.D.C. 216, 194 F.2d 901 (1952); Soucie v. Illinois Agricultural Mut. Ins. Co., 323 Ill.App. 456, 56 N.E.2d 55 (1944); Central Surety & Ins. Corp. v. Corbello, 74 So.2d 341 (La.Ct.App.1954); Richardson v. American Nat. Ins. Co., 18 La.App. 468, 137 So. 370 (1931); Purvis v. Commercial Casualty Co., 160 S.C. 484, 159 S.E. 369 (1931); National Security Life & Cas. Co. v. Davis, 152 Tex. 316, 257 S.W.2d 943, 38 A.L.R.2d 764 (1953); Cooper v. Foresters Underwriters, 2 Utah 2d 373, 275 P.2d 675 (1954), in support of its position.[4] In general, the cases presented the following fact situation: Coverage under the policy for the base period expired at a specific *hour other than midnight* on a given date; each policy contained a grace period or a renewal provision which provided insurance for a given number of days after expiration of original terms of insurance. The insured contended in each case that the coverage, as extended, expired at midnight on the last day of the given number

3. The policy had originally contained the following termination clause:
"TERMINATION: * * * [C]overage for each Insured Person shall automatically cease upon the termination of his or her employment with the Employer."
The original termination clause was substituted by endorsement on October 5, 1964.

4. Chadwick v. Colonial Life & Accident Insurance Co., 271 Ala. 457, 124 So.2d 660 (1960), is also relied upon by the appellant. We do not feel that the facts are parallel. In Chadwick, policy periods were divided into twelve months' segments beginning at 9:00 A.M., September 24, 1954. The payment for each segment was due in advance, but a grace period extended coverage for "31 days after [each] due date." The initial twelve months' segment expired September 24, 1955, and the loss occurred prior to 9:00 A.M. on October 26, 1955.
The insured argued that "due *date*" established a 24-hour period after the expiration of each twelve months' segment (in this case, 9:00 A.M., September 24, 1955), and, thus, the 31-day grace period began at 9:00 A.M., September 25, 1955. The Court rejected this contention on the ground that the policy provided payments were to be made in advance.

of days. The Courts rejected this contention and held that coverage expired at the same hour of the day as the original term of insurance. They reasoned that where extended coverage begins at a specific hour and runs for a given number of days, it expires at the same hour. To hold otherwise, the Courts indicated, would in effect extend coverage for a period of time in excess of the given number of days.

In our judgment, these cases are not controlling here. The termination date in this case is not measured by a given number of days from a specific date and hour. There is no direct relationship between the expiration of the Master Policy and the termination of a covered employee's insurance. Thus, there is no reason to infer that because the Master Policy terminates at 12:01 A.M., that each individual's insurance terminates at the identical hour. Cf., 9 Couch, Insurance § 39:232 (1962).

Language in Cooper v. Foresters Underwriters, supra, supports the appellee's rather than Bankers', position. There the policy expressly provided that all periods of insurance began and ended *at noon* of the last day of the month and that all premiums were required to be paid in advance. The Court held that the grace periods began to run at noon of the day the last premium payment was due and, thus, expired at noon thirty-one days thereafter. The Court rejected the plaintiff's contention that the grace period ran to midnight of the 31st day. In doing so, the Court distinguished *Penn Plate:*

"* * * In the case of Penn Plate-Glass Co. v. Spring Garden Ins. Co., 189 Pa. 255, 42 A. 138, it was held that the provision beginning and ending the insurance period at noon did not control a provision requiring five days' notice for cancellation where there was no evidence as to the time of day that notice was given. The distinction between the notice provision and the grace period provision is obvious; the former has no real relation to the period stipulated for insurance coverage whereas the latter is entirely dependent upon the expiration of the insurance period for its existence. * * *"
275 P.2d at 676.

As Judge Hunter noted, the termination clause here is similar to the cancellation clause in *Cooper:*

"* * * The provision for terminating coverage at a time after the insured leaves the employment of the employer and carries the group policy is in no way dependent for its existence upon the stipulated base period of three years' coverage. The purpose of the termination clause in the policy in question is very similar to the purpose of a cancellation notice provision— each is designed to give the insured an opportunity to make arrangements for new insurance coverage before his present coverage expires. * * *"
Leary v. Bankers Life and Casualty Company, 263 F.Supp. 565, 569 (W.D.Mo. 1967).

■ Finally, the appellant argues that it and Ryder have construed the termination provision as providing insurance only to 12:01 A.M. of the first day of the month following termination of employment. As proof of this practice, the appellant submitted evidence indicating that it only billed for terminated employees until the end of the month in which they were terminated.

■ This practice does not aid the appellant here. Interpretation by practical construction is only resorted to when a policy is ambiguous. E. g., Fullerton v. United States Casualty Co., 184 Iowa 219, 167 N.W. 700, 6 A.L.R. 367 (1918). Since we agree with Judge Hunter that we do not have an ambiguity here, the effect of the alleged practice will not be considered.

Affirmed.